2004 VT 95

**Charles FRAZIER v. PREFERRED OPERATORS, INC., HBH Prestain, Inc., H&H Properties, Inc. and Valiant Insurance Co., Carriers for HBH Prestain, Inc.**

[861 A.2d 1130]

No. 03-454

¶ 1. September 24, 2004. The principal issue in this appeal is whether the Commissioner of the Department of Labor and Industry erred in determining that HBH Prestain, Inc. is the statutory employer of truck driver Charles Frazier for purposes of Vermont's workers' compensation law. We find no error and thus affirm the Commissioner's decision granting Frazier's motion for summary judgment.

¶ 2. The material facts are not in dispute. On December 9, 1998, Charles Frazier was working as a truck driver for Preferred Operators, Inc. when he allegedly fell and injured himself while placing a tarp over lumber that had been loaded onto his truck trailer by HBH employees. The accident occurred at HBH's yard, which had been leased from H&H Properties, Inc.

¶ 3. HBH is engaged in the business of pre-priming and staining lumber for wholesalers and retailers. The company was formed by brothers Frederick and Edward Hawley in 1988. In 1993, the brothers formed H&H to acquire property for lease to HBH. The brothers also formed Preferred Operators in 1994 to haul products to and from HBH's plant. Thus, the three businesses — HBH, H&H, and Preferred Operators — were closely held corporations with overlapping ownership.

¶ 4. Frazier filed a superior court action against Preferred Operators and its officers because the company had allowed its workers' compensation insurance coverage to lapse. See 21 V.S.A. § 618(b) (allowing workers injured on job to bring civil action against employers lacking workers' compensation insurance); § 687(b)(1) (imposing personal liability for work-related injuries on officers and majority stockholders of corporations lacking workers' compensation insurance). Frazier also made claims against HBH, alleging theories of alter ego, undercapitalization, and de facto merger, among others. The superior court proceedings were stayed, however, pending a decision by the Commissioner on the issue of whether HBH qualified as Frazier's "statutory employer" under 21 V.S.A. § 601(3). Before the Commissioner, both Frazier and HBH argued that HBH was Frazier's statutory employer, but Valiant Insurance Company, HBH's workers' compensation carrier, opposed such a finding. In response to the parties' cross-motions for summary judgment, the Commissioner ruled that HBH was Frazier's statutory employer because Frazier was engaged in an integral part of HBH's work at the time he was injured, and because HBH directed Frazier in his work. The Commissioner certified two questions for this appeal: Did the Department have jurisdiction to decide the "statutory employer" issue, given the facts in this case? Assuming jurisdiction existed, was HBH Frazier's statutory employer?

¶ 5. Valiant first argues on appeal that the Department lacked jurisdiction to "pierce the corporate veil" of Preferred Operators and determine that HBH was claimant's statutory employer. According to Valiant, by effectively piercing Preferred Operators' corporate veil, despite the company's separate identity and business goals, the Commissioner considered a common-law legal issue and granted equitable relief, thereby exceeding his limited statutory grant of

authority over administrative matters. Valiant concedes that the Commissioner is empowered to determine whether an employer is a statutory employer under 21 V.S.A. § 601(3), but contends that in this case the Commissioner acted outside the statute by misapplying the common-law principle of "piercing the corporate veil" to establish HBH as a statutory employer.* Valiant further contends that, even if the Department had jurisdiction to consider the issue, most courts across the country have refused to pierce the corporate veil of companies that have failed to provide workers' compensation coverage for their employees.

¶ 6. We find no merit to Valiant's jurisdictional arguments. In determining that HBH was Frazier's statutory employer, the Commissioner examined the statutory definition of employer contained in § 601(3) and considered our case law construing the statute and applying the nature-of-the-business and right-to-control tests. Further, the Commissioner explicitly stated that he did not need to consider, in the context of this case, issues of corporation law such as piercing the corporate veil. We agree that the concept of

piercing the corporate veil was not at issue in this case, and therefore we need not consider whether the Commissioner has the authority to apply the concept in workers' compensation cases. The term "piercing the corporate veil" refers to a common-law equitable remedy by which a court imposes personal liability upon otherwise immune corporate officers, directors, or shareholders for a corporation's wrongful acts. Black's Law Dictionary 1168 (7th ed. 1999). In the context of this administrative proceeding, Frazier is not attempting to pierce HBH's corporate veil to hold individuals liable for the acts or omissions of Preferred Operators. Rather, he is claiming that HBH is his statutory employer under § 601(3) because of the relationship between him and HBH.

¶ 7. That is precisely the relationship that the Commissioner considered in determining that HBH was Frazier's statutory employer. The Commissioner neither considered the relationship between the corporations and stockholders involved nor ruled that the corporate identity of any of those corporations should be pierced to make their officers or stockholders personally liable. Rather, the Commissioner applied the definition of employer contained in § 601(3) to find that HBH had legal obligations to Frazier under the workers' compensation statute. Because § 601(3) contemplates a broader definition of employer than that established by the common law, see *King v. Snide*, 144 Vt. 395, 400, 479 A.2d 752, 754 (1984) ("[Section] 601(3) creates a statutory relationship of employer and employee, where no such relationship existed at common law."), that definition may, under certain circumstances, include indirect corporate employers. Nonetheless, the Commissioner is not precluded by any jurisdictional barrier from finding a statutory employer relationship under such circumstances. See *Norse v. Melsur Corp.*, 143 Vt. 241, 243,

---

* In response to Valiant's brief, Frazier argues that the Commissioner has the authority to determine whether an employer is a statutory employer pursuant to the workers' compensation statute. In its reply brief, Valiant contends that Frazier misstates its position, reiterating that it has not argued that the Commissioner can never decide statutory employer issues, but rather that in this particular case the Commissioner misapplied common-law principles to determine that HBH was Frazier's statutory employer. Thus, the parties have not contested the question of whether the Commissioner has the general authority to determine whether an employer is a statutory employer, as defined in 21 V.S.A. § 601(3).

465 A.2d 275, 277 (1983) ("The Commissioner is given original jurisdiction to hear and determine controversies involving claims for workers' compensation."); *DeGray v. Miller Bros. Constr. Co.*, 106 Vt. 259, 268, 173 A. 556, 560 (1934) (Legislature intended Commissioner to "have original jurisdiction to hear and determine all controverted questions of fact and law arising in the administration of the [workers' compensation] act"). As for the out-of-state cases cited by Valiant, most of them are not on point, and none of them involves interpreting a statutory definition of employer similar to the one contained in § 601(3).

¶ 8. Having rejected defendants' jurisdictional arguments, we now turn to the question of whether the Commissioner erred by finding that HBH was Frazier's statutory employer. Generally, we "defer to the Commissioner's construction of the workers' compensation statute absent a compelling indication of error." *Wood v. Fletcher Allen Health Care*, 169 Vt. 419, 422, 739 A.2d 1201, 1204 (1999). "The Commissioner's decision is presumed valid, to be overturned only if there is a clear showing to the contrary." *Id.* In making its decision here, the Commissioner examined our case law construing § 601(3), which provides that an employer for purposes of the workers' compensation act includes any person or corporation "who is virtually the proprietor or operator of the business there carried on, but who, by reason of there being an independent contractor or for any other reason, is not the direct employer of the workers there employed." As we have noted on several occasions, the legislative intent behind this definition was "to impose liability for workers' compensation benefits upon business owners who hire independent contractors to carry out some phase of their business." *Edson v. State*, 2003 VT 32, ¶ 6, 175 Vt. 330, 830 A.2d 671. Thus, as the Commissioner stated, "the critical inquiry in determining whether an employer is a 'statutory employer' under § 601(3) is whether the type of work being carried out by the independent contractor is the type of work that could have been carried out by the owner's employees as part of the regular course of the business." *Id.* ¶ 7; accord *Vella v. Hartford Vt. Acquisitions*, 2003 VT 108, ¶ 7, 176 Vt. 151, 838 A.2d 126.

¶ 9. "Whether the work contracted for by the owner or proprietor with the independent contractor is a part of, or process in, the trade, business or occupation of the owner or proprietor must be decided on a case by case basis." *King*, 144 Vt. at 401, 479 A.2d at 755. "Due consideration must be given to the customary practice of the owner or proprietor in carrying out his usual business and to the terms of the contract between the employee and independent contractor." *Id.* Employing this test in past cases, we found no statutory employer relationship between (1) a creamery business and a person injured while working for an independent contractor hired by the creamery to construct a new creamery building, *Packett v. Moretown Creamery Co.*, 91 Vt. 97, 99, 101-01, 99 A. 638, 638-40 (1917); (2) a retired grocery store owner managing his daughter's wood lot and a person injured while working for the independent contractor hired by the wood lot manager to log the lot, *King*, 144 Vt. at 401, 479 A.2d at 755; and (3) a commercial landlord and a person injured while working for a busing company that leased the property where the accident occurred from the landlord, *Vella*, 2003 VT 108, ¶¶ 8-10. On the other hand, we found a statutory employer relationship between (1) a state agency engaged in selling and distributing liquor and a person injured while working for the business contracted by the state to transport the liquor, *Edson*, 2003 VT 32, ¶ 9; and (2) a manufacturer of sounding boards and an employee of the inde-

pendent contractor hired by the manufacturer to haul lumber to the manufacturer's factory for use in manufacturing the sounding boards, *O'Boyle v. Parker-Young Co.*, 95 Vt. 58, 61, 112 A. 385, 386 (1921).

¶ 10. The instant case is similar to the latter two cases, particularly *O'Boyle*. Among the parties' stipulated findings were the following: (1) since HBH's first year of operation, it has owned or leased trucks to carry out its operations, specifically to haul its products; (2) HBH offered pick up and delivery service to its customers and charged them for the service; (3) HBH had its own truck drivers to provide delivery services; (4) HBH began using Preferred Operators to deliver its products after its truck was destroyed in a crash; (5) Preferred Operators was established to deliver HBH's products to one of HBH's customers; (6) later, Preferred Operators transported HBH's products to other HBH customers; (7) Preferred Operators' trucks began their pick up and delivery runs at HBH's plant; (8) Preferred Operators or HBH arranged return loads for Preferred Operators' trucks after deliveries; (9) Preferred Operators used a portion of HBH's facilities rent-free for parking and maintenance; (10)· HBH owned the office equipment· used to operate Preferred Operators; (11) Preferred Operators' only employees were two truck drivers, including Frazier; and (12) HBH used one of Preferred Operators' trucks for its own purposes during Preferred Operators' last year in business. These are only some of the undisputed facts demonstrating that "the work being done by the injured employee pertained to [HBH's] business." *Edson*, 2003 VT 32, ¶ 8; see *Wroten v. Lamphere*, 147 Vt. 606, 611, 523 A.2d 1236, 1239 (1987) (sufficiency of facts are tested from point of view favorable to Commissioner's award). Indeed, notwithstanding Valiant's argument that Preferred Operators had customers other than HBH, these facts demonstrate that Preferred Operators was being operated to carry out some phase of HBH's business.

¶ 11. The parties' stipulated findings, which were adopted by the Commissioner, also appear to support its conclusion that Frazier should be considered HBH's employee under the right-to-control test. See *Falconer v. Cameron*, 151 Vt. 530, 532-33, 561 A.2d 1357, 1358 (1989). We need not consider that question, however, in light of our determination that the Commissioner did not err in concluding that HBH was Frazier's statutory employer under § 601(3) and our case law applying the nature-of-the-business test. See *Edson*, 2003 VT 32, ¶ 5. (focusing on language of § 601(3) and prior case law construing statute rather than on degree of control that alleged employer had over employee).

¶ 12. Finally, we find unpersuasive Valiant's public policy argument that the Commissioner's decision (1) unjustly exposes employers and their workers' compensation carriers to liability whenever an employer seeks to sell its products in the marketplace, and (2) will require those carriers to insure risks that they have no way of anticipating. Valiant exaggerates the scope of the Commissioner's decision. The decision does not impose workers' compensation liability whenever an employer wants to sell its products in the marketplace, but rather relies on facts demonstrating that Preferred Operators was an integral part of HBH's business. Indeed, given our prior case law and the undisputed facts of this case, it is difficult to see how Valiant would be unable to anticipate having to insure HBH for injuries sustained by Preferred Operators' two truck drivers while hauling HBH products.

*Affirmed.*