2008 VT 70

## In re Chatham Woods Holdings, LLC

[955 A.2d 1183]

No. 07-046

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed May 16, 2008

*Edward D. Fitzpatrick* and *Daniel P. O'Rourke* of *Bergeron, Paradis & Fitzpatrick, LLP*, Essex Junction, for Plaintiff-Appellant.

*Barbara R. Blackman* and *Jeffrey S. Marlin* of *Lynn, Thomas & Mihalich, P.C.*, Burlington, for Defendant-Appellee.

¶ 1. **Reiber, C.J.** Plaintiff Chatham Woods Holdings, LLC appeals from a decision affirming additional premium charges on a workers' compensation insurance policy issued by Peerless Insurance Company. The Commissioner of the Department of Banking, Insurance, Securities and Health Care Administration (Commissioner) concluded that Peerless was correct in classifying certain subcontractors as employees of Chatham Woods for purposes of workers' compensation and thus was justified in charging Chatham Woods additional premiums. Chatham Woods argues that it is not responsible for the additional premiums because: (1) the subcon-

tractors are sole proprietors and are thus excluded from the statutory definition of employee under 21 V.S.A. § 601(14)(F); and (2) if the sole-proprietor exclusion does not apply, then Chatham Woods is not a statutory employer of the subcontractors under 21 V.S.A. § 601(3). For the reasons set forth below, we affirm the Commissioner's decision.

¶ 2. Chatham Woods is a real-estate-development company that acquires land and secures state and local permits to subdivide the land. In the past, it has not routinely involved itself in the building process. Instead, it generally sells developed land along with permits to a builder. In this case, however, when Chatham Woods could not find a suitable purchaser for a development project, it began building and selling residential units itself. Except for excavation, the two owners of Chatham Woods did not directly participate in the construction of the units, but instead subcontracted the work to various construction companies. Among the companies hired to construct the residential units were the three companies relevant to this dispute. Ken Nelson Construction is a framing business whose sole proprietor and employee is Kenneth Nelson. Mr. Nelson elected not to purchase workers' compensation insurance for himself during the relevant time period. Roofing Solutions is a roofing business whose sole proprietor and employee is Mathew Yarbenet. Like Mr. Nelson, Mr. Yarbenet elected not to purchase workers' compensation insurance for himself. BK Construction, Inc. is owned by Bryan Howes. He performed framing work for Chatham Woods and had no employees. Although not technically a sole proprietor, Mr. Howes obtained an exclusion from workers' compensation coverage from the Commissioner of Labor and Industry allowing him not to purchase coverage for himself. Chatham Woods believes its argument concerning the exemption for sole proprietors extends by analogy to the exemption granted to BK Construction.

¶ 3. Vermont's workers' compensation laws mandate that employers secure insurance for their employees to protect the employees in the event of work-related injuries. 21 V.S.A. § 687(a). Workers' compensation statutes strike a bargain between limiting recovery amounts and guaranteeing speedy compensation. *Longe v. Boise Cascade Corp.*, 171 Vt. 214, 221, 762 A.2d 1248, 1255 (2000). Chatham Woods obtained workers' compensation insurance from Peerless for the Williston project. In an audit of this policy, Peerless concluded that the three individuals associated with

Nelson, Roofing Solutions, and BK Construction were employees of Chatham Woods, rather than independent contractors. The audit determined that Chatham Woods was required to provide additional workers' compensation coverage that was not included in the original assessment. Peerless charged Chatham Woods an additional premium of $22,640 for these three employees.

¶ 4. Chatham Woods appealed the additional premium charge to the Workers' Compensation Appeals Board. The Board affirmed the additional charge. Chatham Woods then appealed to the Commissioner. The Commissioner designated a hearing officer to hear the appeal. After an evidentiary hearing, the hearing officer issued a proposed decision to affirm the Board. The hearing officer applied the "nature-of-the-business" test and the "right-to-control" test to determine whether the subcontractors were acting as employees or as independent contractors. See *Frazier v. Preferred Operators, Inc.*, 2004 VT 95, ¶ 11, 177 Vt. 571, 861 A.2d 1130 (mem.) (applying the nature-of-the-business test); *RLI Ins. Co. v. Agency of Transp.*, 171 Vt. 553, 554, 762 A.2d 475, 477 (2000) (mem.) ("When determining whether a worker is an employee or an independent contractor, we have relied on the 'right to control' test."). According to the hearing officer, although Chatham Woods may have satisfied the right-to-control test, it failed the nature-of-the-business test. The hearing officer found that the subcontractors' work "pertained" to and was a "major part of, or process in" Chatham Woods' overall business of "developing land, building residential units, and selling them to buyers." The hearing officer then concluded that the three individuals were not independent contractors but rather statutory employees of Chatham Woods, which was, therefore, required to secure additional workers' compensation insurance.

¶ 5. Chatham Woods appealed this proposed decision to the Commissioner. The Commissioner adopted in full the findings of fact and conclusions of law of the hearing officer, rejecting Chatham Woods' argument that the subcontractors were excluded from coverage due to their status as sole proprietors. In reaching this conclusion, the Commissioner first considered the exemption granted to BK Construction. The Commissioner found that the approval BK Construction obtained from the Commissioner of Labor and Industry to exempt its executive officer from provisions of workers' compensation laws only removed the obligation of BK Construction as an employer to obtain coverage for *its* employees,

but it did not affect Chatham Woods' obligations as an employer under 21 V.S.A. § 601(3). Similarly, the Commissioner reasoned that the sole-proprietor exclusion provided by § 601(14)(F) only exempted Nelson and Roofing Solutions from providing coverage to their sole-proprietor employees, but did not exempt Chatham Woods from having to provide coverage for the same individuals.[1] The Commissioner further concluded that Chatham Woods was the statutory employer of the subcontractors under § 601(3) because the work they performed "was part of, or process in, the overall business of [Chatham Woods]." Accordingly, the Commissioner affirmed the Board's decision. This appeal followed.

¶ 6. On review, we will generally defer to administrative bodies, both in their findings of fact and their interpretations of their governing statutes and regulations. *In re Cent. Vt. Med. Ctr.*, 174 Vt. 607, 608, 816 A.2d 531, 535 (2002) (mem.). The Commissioner's decisions are "presumed to be correct, valid and reasonable, absent a clear and convincing showing to the contrary." *Id.* (citing *In re Prof'l Nurses Serv., Inc.*, 164 Vt. 529, 532, 671 A.2d 1289, 1291 (1996)). This Court may reverse an order by the Commissioner if it: "(1) was issued pursuant to unconstitutional statutory provisions; (2) was in excess of statutory authority; (3) was issued on unlawful procedure; or (4) is not supported by substantial evidence in the record." 8 V.S.A. § 16.

¶ 7. Chatham Woods argues first that it was not required to purchase workers' compensation insurance for Roofing Solutions and Nelson because they were excluded from the statutory definition of employee. Under 21 V.S.A. § 601(14)(F)[2] " 'employee' . . . shall not include . . . the sole proprietor . . . of an

---

[1] Chatham Woods argues that the Commissioner did not address the status of Nelson and Roofing Solutions as sole proprietors, but limited his decision solely to BK Construction. The Commissioner did, however, specifically address Chatham Woods' sole-proprietor argument, which included Nelson and Roofing Solutions. The Commissioner concluded that Chatham Woods' "argument . . . based upon 21 V.S.A. § 601(14)(F) (excluding 'sole proprietor' from the definition of 'employees' required to be covered for workers' compensation purposes) is inapplicable to the facts of this case . . . ." This conclusion is supported by the Commissioner's analysis of BK Construction's exemption, which, as Chatham Woods argues on appeal, is "analogous to its sole proprietor argument."

[2] This statute was amended in May 2004, but the amendments became effective after the commencement of the policy period in question and are not directly relevant to our inquiry. On appeal, neither party contends that they are. Accordingly, all references in this opinion are to the pre-amendment statute.

unincorporated business, unless such sole proprietor or partner notifies the commissioner of his or her wish to be included within the provisions of this chapter . . . ." Chatham Woods states that "the statute on its face compels the conclusion that Chatham Woods need not provide workers' compensation insurance for sole proprietors." Similarly, Chatham Woods argues that the exemption BK Construction received from the Department of Labor and Industry eliminates Chatham Woods' obligation to provide coverage. With respect to both claims, we agree with the Commissioner that these exemptions only affect the scope of the *contractors'* obligations to provide coverage for individuals under the *contractors'* employment. These exemptions do not affect the obligations Chatham Woods has towards those same individuals when they are working for Chatham Woods.[3]

¶ 8. In reaching this holding, we defer to the Commissioner's interpretation, *In re Central Vermont Medical Center*, 174 Vt. at 608, 816 A.2d at 535, and we are conscious that Vermont's workers' compensation statute is "'remedial in nature and must be liberally construed to provide injured employees with benefits unless the law is clear to the contrary.'" *Murray v. Luzenac Corp.*, 2003 VT 37, ¶ 4, 175 Vt. 529, 830 A.2d 1 (mem.) (quoting *St. Paul Fire & Marine Ins. Co. v. Surdam*, 156 Vt. 585, 590, 595 A.2d 264, 266 (1991)). Here, the Commissioner's interpretation of § 601(14)(F) furthers the remedial objectives of the workers' compensation statute. The Commissioner's reading of this section tends towards inclusivity, while the interpretation put forward by

---

[3] The individuals owning and operating Roofing Solutions, Ken Nelson Construction, and BK Construction signed identical written agreements with Chatham Woods stating that the subcontractor was not an employee of Chatham Woods, that each subcontractor chose not to purchase workers' compensation insurance, and that each subcontractor indemnified Chatham Woods against any and all claims and damages. Peerless argues that this attempt to eliminate workers' compensation benefits by contract is prohibited by 21 V.S.A. § 625 ("An employer shall not be relieved in whole or in part from liability . . . by any contract, rule, regulation or device whatsoever."). Chatham Woods does not argue, however, that these agreements affect its obligation to purchase workers' compensation insurance. Instead Chatham Woods notes that the agreements "merely recited that each party was aware of their right to purchase workers' compensation insurance from their own carrier and they elected not to." Thus, our holding does not rely on, and is not affected by, these agreements.

Chatham Woods would tend to exclude certain individuals from coverage.

■ ■ ¶ 9. The purpose of the workers' compensation statute is to provide employees with a remedy independent of proof of fault, and employers with a limited and determinate liability. *Longe,* 171 Vt. at 221, 762 A.2d at 1255. To effectuate this purpose we favor an "all embracing" definition of employee and employer where such a construction is reasonable. *Fotinopoulos v. Dep't of Corr.,* 174 Vt. 510, 512, 811 A.2d 1227, 1229 (2002) (mem.). As discussed above, the Commissioner's reading of § 601(14)(F) exempts a sole proprietor from the obligation to insure his *own sole proprietorship* against liability for injury to himself. The statute allows a sole proprietor to assume liability risks when the employee/employer distinction disappears. When "employer" and "employee" are the same person, the bargain struck by the statute between limiting recovery and ensuring compensation is not implicated. It *is* implicated, however, when potential liability does not end with the sole-proprietor employee, but extends to third parties like Chatham Woods here. In this situation, the statute mandates insurance coverage to effectuate its remedial purposes. The Commissioner's determination that the sole-proprietor exclusion does not apply to Chatham Woods is consistent with this statutory scheme. Peerless correctly recognized that these uninsured contractors presented a liability risk to its insured, Chatham Woods, despite the sole-proprietor exemptions.

¶ 10. Our inquiry does not end here, however. Chatham Woods argues alternatively that if the sole-proprietor exclusion does not apply, then it was not required to secure workers' compensation coverage for these subcontractors because it was not their statutory employer. The workers' compensation statute defines "[e]mployer" as:

> [A]ny body of persons, corporate or unincorporated . . . includ[ing] the owner or lessee of premises or other person who is virtually the proprietor or operator of the business there carried on, but who, by reason of there being an independent contractor or for any other reason, is not the direct employer of the workers there employed.

21 V.S.A. § 601(3). Section 601(3) creates a statutory employer/ employee relationship where no such relationship existed at com-

mon law. *King v. Snide*, 144 Vt. 395, 400, 479 A.2d 752, 754 (1984). The legislative intent was to impose liability on "the owner or proprietor of a regular trade or business conducted on his premises . . . where an uninsured independent contractor is carrying out some phase of the owner's or operator's business." *Id.* at 401, 479 A.2d at 754.

¶ 11. Determining whether an employer/employee relationship exists requires a case-by-case analysis. *Fotinopoulos*, 174 Vt. at 512, 811 A.2d at 1230 (citing *King*, 144 Vt. at 401, 479 A.2d at 755). This Court has repeatedly stated that the test "is whether the work that the owner contracted for is a part of, or process in, the trade, business or occupation of the owner." *Edson v. State*, 2003 VT 32, ¶ 7, 175 Vt. 330, 830 A.2d 671 (quotation omitted). This test is referred to as the "nature-of-the-business" test. *Frazier*, 2004 VT 95, ¶ 11. It focuses more on the language of § 601(3) and our prior case law interpreting this section than on the extent of control the alleged employer had over the employee. *Id.* (citing *Edson*, 2003 VT 32, ¶ 5). As noted above, the purpose of this test is to impose workers' compensation liability on business owners who hire independent contractors to carry out some phase of their business. *Id.* ¶ 8.

¶ 12. The Commissioner decided that the framing and roofing services performed by these contractors were in the nature of Chatham Woods' business. Chatham Woods argues that the Commissioner's conclusion should be reversed because it is not supported by substantial evidence. Chatham Woods contends that when applying the nature-of-the-business test, due consideration must be given to the customary practice of the owner in carrying on his usual business. Thus, Chatham Woods urges this Court to conclude that Chatham Woods "is a developer and that framing and roofing are not part of its customary practice and usual business." Peerless counters by arguing that, regardless of the nature of Chatham Woods' business elsewhere, the type of business conducted at the Williston site was definitively that of a builder. Peerless argues that the purpose of these statutes is to prevent business owners or general contractors from avoiding liability by hiring independent contractors to do what they would have otherwise done themselves by hiring direct employees. While we have held that "[d]ue consideration must be given to the customary practice of the owner or proprietor in carrying out his

usual business," *Frazier*, 2004 VT 95, ¶ 9 (quotation omitted), this does not mean that a company expanding or changing the nature of its business can avoid workers' compensation liability simply because its present business differs from its past business. Along this line of reasoning, the hearing officer concluded that:

> [Chatham Woods] was building residential housing units for sale to third parties. . . . To accomplish the construction of these residential units, [Chatham Woods] hired subcontractors to build residential units. . . . While Chatham Woods may be in the real estate developing business, its business of building and selling residential units is inextricably intertwined with its real estate developing process, certainly insofar as the Williston project is concerned. The construction that [Chatham Woods] contracted for with the three subcontractors was a major part of, or process in, the overall business of [Chatham Woods].

We agree. Chatham Woods operated as a developer *and* a builder at the Williston project. Indeed, Chatham Woods' role as a builder was arguably not a "new" business at all, but simply a new way of conducting its customary business of buying and selling land. The land in this case was apparently not saleable without residential units on it, so Chatham Woods' customary business — selling the land — required it to build the buildings, which it did. The framing and roofing services contracted for were plainly "a part of, or process in," its business. *Edson*, 2003 VT 32, ¶ 7.

¶ 13. In prior cases applying the nature-of-the-business test we have found a statutory employer relationship between: (1) a lumber trimming/staining business and a truck driver of a business contracted to haul products to and from the plant, *Frazier*, 2004 VT 95, ¶ 10; (2) a state agency engaged in selling and distributing liquor and a person injured while working for the business contracted by the state to transport the liquor, *Edson*, 2003 VT 32, ¶ 9; and (3) a manufacturer of sounding boards and an employee of the independent contractor hired by the manufacturer to haul lumber to the manufacturer's factory, *O'Boyle v. Parker-Young Co.*, 95 Vt. 58, 61, 112 A. 385, 386 (1921). In contrast, we found no employer/employee relationship between: (1) a creamery business and a person injured while working for an independent contractor hired by the creamery to construct a new

creamery building, *Packett v. Moretown Creamery Co.*, 91 Vt. 97, 99-101, 99 A. 638, 638-40 (1917); (2) a retired grocery store owner managing his daughter's wood lot and a person injured while working for the independent contractor hired to log the lot, *King*, 144 Vt. at 401, 479 A.2d at 755; and (3) a commercial landlord and a person injured while working for a busing company that leased from the landlord the property where the accident occurred, *Vella v. Hartford Vt. Acquisitions*, 2003 VT 108, ¶¶ 8-10, 176 Vt. 151, 838 A.2d 126.

■ ¶ 14. We agree with the Commissioner that the relationship between Chatham Woods and the subcontractors was more analogous to the former class of cases than the latter. The roofing and framing services these subcontractors provided were central to Chatham Woods' successful completion of the Williston project. In *Vella*, the owner was in the business of leasing property, not operating a busing company. In *Packett*, the creamery was in the business of selling milk, not buildings. The construction of the new facility may have benefited the creamery business, but it was certainly not a "phase" or "major part" of the creamery trade. By contrast, the framing and roofing services provided by the subcontractors here were essential to Chatham Woods' business of building and selling residential units. The profits to be made at the Williston project could not have been more directly related to the value added to the land by the construction of the residential units. Furthermore, the builder/subcontractor relationship is "well known to, and recognized by, the Legislature." *Welch v. Home Two, Inc.*, 172 Vt. 632, 634, 783 A.2d 419, 422 (2001) (mem.). Workers' compensation statutes are "nearly universal" in intending "to make the general contractor the employer for purposes of extending coverage." *Id.* For all of the above reasons, we will not disturb the Commissioner's conclusion that Chatham Woods was the statutory employer of these three subcontractors, and thus was required to secure workers' compensation insurance for their benefit.

*Affirmed.*