2012 VT 3

**Melissa MARCUM v. STATE OF VERMONT AGENCY OF HUMAN SERVICES**

[38 A.3d 1177]

No. 10-472

¶ 1. January 6, 2012. Nurse Melissa Marcum appeals from the trial court's grant of summary judgment to the Vermont Agency of Human Services denying her status as a state employee entitled to workers' compensation benefits for a workplace injury. Nurse argues that based on her job of carrying out the Agency's business and the Agency's control of her work, the court erred in treating her like an independent contractor and in not deeming the Agency to be her employer. We disagree and affirm.

¶ 2. The following facts were found by the trial court and are not disputed. Nurse is a licensed practical nurse who worked both at Dartmouth Hitchcock Medical Center and as a home-caregiver for a young boy afflicted by a congenital respiratory condition. Nurse began providing home nursing services to the child in late 2006 after being approached by the patient's mother. The mother had applied, but had not yet been determined eligible, for services under the Family Managed Nursing Initiative Program (FMNI) — a Medicaid-funded program administered by the Agency. Her application was pending when nurse began caring for the child at his home.

¶ 3. When nurse began her at-home services, she did so as a Personal Care Attendant (PCA). This allowed the Agency to fund services to the child

574

through another program known as the Children's Personal Care Services Program. Coincidentally, the Legislature extended state workers' compensation coverage to PCAs paid by that program, while specifying that PCAs were not to be considered state employees for any other purpose. 33 V.S.A. § 6321(h).[*]

¶ 4. In January 2007, after nurse worked with the child for about three months, the child's family was eligible to receive Medicaid-funded services under the FMNI program. Nurse's status changed from a PCA paid through the Children's Personal Care Services Program to a Medicaid provider paid at a higher rate under FMNI. No longer a paid PCA, nurse was no longer covered by the statutory extension of workers' compensation insurance for PCAs. To receive FMNI Medicaid payments, nurse signed a Provider Enrollment Agreement specifying that she would be paid by, and would bill for her services directly to, the Medicaid payment agent. According to the FMNI program specifications, nurses in the program were "self employed," "responsible for handling their own tax payments," and "not eligible to receive employment benefits (insurance benefits, paid vacations, etc.)." The Enrollment Agreement further set forth the Agency's role as facilitating "payment for the provision of health services and items to eligible beneficiaries" in the program.

¶ 5. Six months later, in June 2007, nurse injured her arm while working in the child's home. In January 2008, she filed a workers' compensation claim against the Agency with the Department of Labor. Finding nurse was not a state employee, and therefore ineligible for workers' compensation benefits, the Labor Commissioner granted the State's

motion for summary judgment. Upon nurse's appeal, the commissioner certified the following two questions to the trial court: "(1) Was claimant an employee of [the Agency] at the time of her June 5, 2007 injury"; (2) If yes, is claimant's current claim time-barred under the provisions of 21 V.S.A. §§ 656 and 660(a)?" The court found nurse was not a state employee at the time of her injury, and granted the State's motion for summary judgment without addressing the timeliness question.

¶ 6. The case before us is an appeal from that decision. We apply the same standard as the trial court. Namely, "[s]ummary judgment should be granted when, taking all allegations made by the nonmoving party as true, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Madden v. Omega Optical, Inc.*, 165 Vt. 306, 309, 683 A.2d 386, 389 (1996).

¶ 7. The Vermont Workers' Compensation Act replaced employers' common law liability for workers' injuries with a schedule of specified compensation to be paid injured employees, generally regardless of fault. 21 V.S.A. § 618. As this Court has noted, "[w]orkers' compensation law represents a public policy compromise in which the employee gives up the right to sue the employer in tort in return for which the employer assumes strict liability and the obligation to provide a speedy and certain remedy for work-related injuries." *Gerrish v. Savard*, 169 Vt. 468, 470, 739 A.2d 1195, 1197-98 (1999) (quotation omitted). Section 618 would entitle nurse to compensation if she received "a personal injury by accident arising out of and in the course of employment by an employer subject to this chapter." 21 V.S.A. § 618(a)(1). Thus, the operative question is whether the Agency was her employer at the time of injury.

¶ 8. The Act defines "employer," in pertinent part, as:

---

[*] Though not pertinent here, § 6321 also provides that PCAs are to be considered state employees for the purpose of unemployment compensation.

any body of persons, corporate or unincorporated, public or private . . . and includes the owner or lessee of premises or other person who is virtually the proprietor or operator of the business there carried on, but who, by reason of there being an independent contractor or for any other reason, is not the direct employer of the workers there employed.

*Id.* § 601(3). This definition expands upon the common law concept of "employer" to include business operators who purport to hire, as contractors, minions to carry out the proprietor's own "regular trade or business" in an attempt to avoid workers' compensation liability for employees. *King v. Snide,* 144 Vt. 395, 400-01, 479 A.2d 752, 754 (1984). The legislative intent in designating these individuals as "statutory employers" was "to impose liability only upon the owner or proprietor of a regular trade or business . . . where an uninsured independent contractor is carrying out some phase of the owner's or operator's business." *Id.* at 401, 479 A.2d at 754.

¶ 9. Thus understood, the statutory definition of "employer" does not encompass the Agency-nurse relationship here. Statutory employer status is determined by the nature of the putative employer's business. *In re Chatham Woods Holdings, LLC,* 2008 VT 70, ¶ 11, 184 Vt. 163, 955 A.2d 1183. Specifically, this "nature-of-the-business" test asks "whether the work contracted for [by the owner or proprietor with the independent contractor] is a part of, or process in, the trade, business or occupation of the owner [or proprietor.]" *Id.* (quotations omitted); *King,* 144 Vt. at 401, 479 A.2d at 755. Shared commonality of interest with associated businesses is insufficient to render a proprietor a statutory employer of the associate's employees. See, e.g., *Vella*

*v. Hartford Vt. Acquisitions, Inc.,* 2003 VT 108, ¶ 15, 176 Vt. 151, 838 A.2d 126 (holding that lessor of a commercial garage was not statutory employer of leasing bus company employee who was injured there); *King,* 144 Vt. at 401, 479 A.2d at 755 (holding that unofficial manager of a wood lot was not statutory employer of an independent logger's employee injured on the premises); *Packett v. Moretown Creamery Co.,* 91 Vt. 97, 99-101, 99 A. 638 (1917) (holding that a creamery was not statutory employer of a contractor hired to build a new structure). In contrast, and like in *In re Chatham Woods Holdings, LLC,* 2008 VT 70, ¶ 11, where framing and roofing subcontractors were hired by a real estate developer turned builder, an owner will be deemed a statutory employer where a worker is carrying out a business owner's "trade, business or occupation."

¶ 10. From the uncontested facts before the court, it was evident that the Agency's sole function in this case was to administer a public welfare Medicaid program while nurse's business was actual provision of nursing care in return for Medicaid payments. Nurse was an independent contractor, but was not hired to carry on the Agency's business. She performed no service that was otherwise available from, or could be delivered by, the Agency. The Agency was not a nursing service and, except for billing, in no manner controlled, supervised or directed nurse's professional activities. Accordingly, the court determined that the Agency was not nurse's employer for purposes of workers' compensation liability.

¶ 11. The court analogized to a similar conclusion reached in *Reeder v. State,* 649 N.W.2d 504 (Neb. Ct. App. 2002), under similar circumstances. In that case, the plaintiff patient sued Nebraska's Medicaid agency for an injury caused by a Medicaid-paid home health care provider. Like the FMNI program here, Nebraska Medicaid beneficiaries chose their per-

sonal and nursing care providers and scheduled their services. *Id.* at 508-09. The agency authorized payment for the hours of care prescribed by a doctor, and, again like FMNI, specified provider billing and payment procedures. *Id.* Upholding the trial court's ruling that the home care worker was an independent contractor rather than an agency employee, the court considered nature-of-the-business factors as well as traditional elements of master-servant relationships. *Id.* at 511-12. Comparing the agency's regular business with the provider's work, the court distinguished between the Medicaid agency's funding of health care services and the business of "providing the services of a chore provider" or nurse. *Id.* at 516. The court reiterated earlier precedent that the agency's business of distributing funds so that the needy obtain services for which they could not otherwise pay was not tantamount to being in the business of providing care to individuals. *Id.* Indeed, the court noted that even though the state played an integral role in the program, it was not in the business of delivering provider services, but "in the business of paying for the services pursuant to welfare programs." *Id.* (quotation omitted).

¶ 12. The trial court's analogy to *Reeder* was apt. The Agency's business of administering a welfare program was different from the nurse's work of personal care delivery. That the State operates a Medicaid program to secure payment to health care providers does not render Medicaid providers employees of the State. The undisputed facts supported the court's conclusion that the Agency was not a statutory employer of nurse.

¶ 13. Alternatively, nurse argues that the Agency so influenced the details of her work that it should be treated as her employer in any event. Her reliance on the so called right-to-control-the-work test, however, is misplaced. Although this Court has affirmed consideration of who

controls the work to distinguish employees entitled to workers' compensation coverage from independent contractors, *Falconer v. Cameron*, 151 Vt. 530, 532, 561 A.2d 1357, 1358 (1989), we have since "repeatedly stated that the test is whether the work that the owner contracted for is a part of, or process in, the trade, business or occupation" of the putative employer, *In re Chatham Woods Holdings, LLC*, 2008 VT 70, ¶ 11 (quotation omitted). As discussed above, this nature-of-the-business test is preferred because it "focuses more on the language of § 601(3) and our prior case law interpreting this section than on the extent of control the alleged employer had over the employee." *Id.*

¶ 14. Nevertheless, nurse's claim against the Agency fares no better from the standpoint of who controlled her work. The trial court's finding and conclusion that the Agency exercised no control over the provision of home care to the child are supported by the record. Her argument on appeal emphasizes that it was the child's parents, rather than the Agency, that scheduled, directed and supervised her delivery of services.

¶ 15. Nurse further contends that she was never notified of the change in coverage and that, had she known of the consequences, she would not have continued in home care without insurance. This was partially acknowledged in the commissioner's finding that nurse did not understand that her transition from PCA to Medicaid provider would affect workers' compensation coverage. Her claim to the commissioner, however, that this lack of notice somehow amounted to a failure by the Agency to comply with requirements of 21 V.S.A. § 601(14)(F), which exempts contractors from coverage under certain circumstances, was denied as a misapprehension of the statute. Whatever nurse's theory of redress concerning lack of notice, its rejection and the import of the

circumstances surrounding the termination of her coverage were not preserved in the questions presented for the trial court's review.

*Affirmed.*