ROBINSON, J.
*498 ¶ 1. The question in this workers' compensation case is whether employer Champlain College is obligated to include in claimant Kimberly Haller's average weekly wage calculation the value of tuition-free college credits she earned in accordance with employer's graduate tuition policy. On cross-motions for summary judgment, the Commissioner of the Department of Labor concluded that the tuition benefits provided by employer and used by claimant was an "other advantage" that constituted part of claimant's wages. 21 V.S.A. § 601(13). We agree and affirm.
¶ 2. The relevant facts here are undisputed. At all times relevant to these proceedings claimant was an employee of Champlain College for purposes of Vermont's workers' compensation laws. On March 10, 2014, claimant suffered a work-related injury, which employer has accepted. At the time of her injury, claimant was employed as employer's Recruitment Director.
¶ 3. Since May 2012, claimant had taken numerous courses at Champlain College pursuant to its "Tuition Benefits" policy. That policy allows college employees, their spouses, and eligible dependent children to take undergraduate and graduate courses on a space-available basis, tuition free. In relevant part, § 4.3.1 of employer's Tuition Benefits policy provides[1] :
Employees of the College may normally take for-credit Graduate courses tuition-free on a "space-available" basis. If an individual is matriculating in a degree program every effort will be made to accommodate that student in the current term and if space prohibits then the student will be seated in the following terms for that course ....
Books, residency costs, labs, fees and other non-tuition expenses are not paid for by the College. IRS regulations determine the maximum amount of tuition value, per calendar year, that need not be reported as taxable wages. Note: IRS regulations stipulate that tuition benefits valued at over $5,250 per calendar year are to be reported as taxable wages on the employee's W-2 form unless the amount is excludable as a "working condition fringe."
Champlain College pays the employer FICA taxes on taxable wages. The employee is responsible for all other taxes. Employee taxes are deducted during normal payroll cycles. This benefit is not available to retirees.
¶ 4. During the twenty-six weeks prior to her work-related injury, claimant completed ten and one half credits of classwork at Champlain College. She paid no money for these course credits. Claimant considered the free tuition policy to be one of the benefits of working for employer as it allowed her to work toward, and earn, a graduate degree without paying any tuition. This free tuition was a substantial financial benefit to claimant and was one of the reasons she chose to work for employer.
*499 ¶ 5. The issue presented to the Commissioner on cross-motions for summary judgment was whether the value of these tuition benefits should be included in the calculation of claimant's average weekly wage for the purposes of her permanent partial disability benefit.[2] "Wages" are defined to include "bonuses and the market value of board, lodging, fuel, and other advantages which can be estimated in money and which the employee receives from the employer as a part of his or her remuneration." 21 V.S.A. § 601(13). The specific issue in this case is whether claimant's tuition benefits fall within "other advantages which can be estimated in money and which the employee receives from the employer as part of his or her remuneration." Id.
¶ 6. In analyzing this question of first impression, the Commissioner first distinguished this Court's recent decision that the value of employer-provided health insurance benefits should not be included in the calculation of wages. See Lydy v. Trustaff, Inc., 2013 VT 44, 194 Vt. 165, 76 A.3d 150. In determining whether the tuition benefit should be included in the wage calculation, the Commissioner considered three questions gleaned from prior Department decisions: First, is the benefit a "significant part" of the compensation? Second, does the employee derive true value from the offered benefit or is it a benefit that means little to the employee except as an enhancement to an average weekly wage? And third, is the value of the benefit reasonably subject to objective valuation?
¶ 7. Noting the remedial nature of the workers' compensation laws, the Commissioner answered the above questions in the affirmative. The free tuition was a substantial benefit to claimant and was one of the reasons she worked at Champlain College. She derived true value from the program; she had taken advantage of it from 2012 until 2014 and was using it to acquire a master's degree. And, finally, the benefit was subject to simple valuation.[3] The Commissioner explained that including the value of the free tuition in claimant's wage calculation would not upset the "delicate balance" struck between employees and employers in the workers' compensation setting and concluded that the free tuition benefit claimant received qualified as an "other advantage" that can be easily estimated and that was paid to her as remuneration for her work.
¶ 8. Employer appealed, and the Commissioner certified for our review the question of whether employer was obligated to include in claimant's average weekly wage calculation the value of tuition-free *500 college credits earned by claimant in accordance with its employee tuition policy.
¶ 9. On appeal, employer argues first and foremost that this Court's recent ruling that employer-provided health insurance benefits are not "other advantages" included within the definition of wages dictates the outcome of this case. See Lydy, 2013 VT 44, 194 Vt. 165, 76 A.3d 150. Employer further argues that the benefit in question did not amount to "remuneration," 21 V.S.A. § 601(13), that the Commissioner's determination that the tuition benefit was capable of simple valuation was based on a mistake of fact, and that the Commissioner's decision will upset the "delicate balancing" between an injured worker's right to compensation and an employer's right to limited and determinate liability. Lydy, 2013 VT 44, ¶ 19, 194 Vt. 165, 76 A.3d 150.
¶ 10. In construing a statute, "[o]ur paramount goal ... is to give effect to the Legislature's intent." State v. Deyo, 2006 VT 120, ¶ 14, 181 Vt. 89, 915 A.2d 249. In interpreting the workers' compensation statute, "we will defer to the Commissioner's construction of the Workers' Compensation Act, absent a compelling indication of error." Lydy, 2013 VT 44, ¶ 4, 194 Vt. 165, 76 A.3d 150 (quotation omitted). Our deference is not unlimited, however, and "we will not affirm an interpretation that is unjust or unreasonable." Clodgo v. Rentavision, Inc., 166 Vt. 548, 550, 701 A.2d 1044, 1045 (1997). Moreover, in reviewing the Commissioner's determination, we must be mindful that our workers' compensation laws are "remedial in nature and must be liberally construed to provide injured employees with benefits unless the law is clear to the contrary." St. Paul Fire & Marine Ins. Co. v. Surdam, 156 Vt. 585, 590, 595 A.2d 264, 266 (1991).
¶ 11. We conclude there was no compelling indication of error in the Commissioner's determination for several reasons. First, this case is different from Lydy in several notable and significant ways. While our analysis in Lydy may shed some light on the applicable standards, Lydy is in no way controlling in this case. Second, the Commissioner's analysis gives effect to the language of the workers' compensation statute and is consistent with that law's purposes. Third, the Commissioner's decision is consistent with the Department's own caselaw on the subject.
¶ 12. This Court's decision in Lydy does not control the outcome of this case. In Lydy, the Court, in a 3-2 decision, concluded that employer-provided health insurance benefits were not an "other advantage" received as part of the employee's remuneration. 2013 VT 44, ¶ 19, 194 Vt. 165, 76 A.3d 150. Several considerations that do not apply here weighed heavily in the Court's analysis in that case.
¶ 13. In Lydy, the Commissioner ruled that the health insurance benefit was not an "other advantage" for the purposes of the wage calculation. Id. ¶ 1. The deference we afford to the Commissioner's construction of the workers' compensation laws, absent a compelling indication of error, supported exclusion of health insurance benefits from the definition of wages in Lydy, but supports inclusion of the free tuition benefit in this case. Id. ¶ 4. Moreover, the Commissioner's determination that health insurance was not an "other advantage" was consistent with twenty years of established, and unappealed, departmental case law. Id. ¶18; see also Pelissier v. Hannaford Bros., No. 26-11WC (Sept. 11, 2009), http://labor.vermont.gov/ wordpress/wp-content/uploads//PelissierDecision.pdf [https://perma.cc/Q4RW-BQEL] (citing a series of decisions dating back to 1990 in which the Commissioner rejected argument that value of health insurance should be included *501 in wage calculation). A decision to the contrary would have upset long-settled expectations and actuarial calculations with potentially a substantial impact on the workers' compensation system. Lydy, 2013 VT 44, ¶ 18, 194 Vt. 165, 76 A.3d 150.
¶ 14. Plus, the prevalence of health insurance as an employment benefit across sectors and through most of the labor market lent particular support to the notion that if the Legislature had intended to include this widely provided benefit as part of wages, it would not have relied on the catch-all "other advantages," but would have expressly included health insurance in the definition of wages. See id. ¶ 11 (explaining that "because the Legislature has not amended the definition [of wages] to include employer-paid health insurance after it developed into a customary benefit, it is prudent to conclude that such a benefit was not intended to be part of an employee's average weekly wage").
¶ 15. Finally, the Court's analysis in Lydy relied in part on a U.S. Supreme Court decision that an employer's contributions to a union trust fund that supported life insurance, health insurance, retirement benefits, and career training for employees were not wages under the Longshore and Harbor Workers' Compensation Act-a statute with a similar, but not identical, definition of wages to Vermont's workers' compensation statute. See id. ¶¶ 13-16 (discussing Morrison-Knudsen Constr. Co. v. Dir., Office of Workers' Comp. Programs, 461 U.S. 624, 103 S.Ct. 2045, 76 L.Ed.2d 194 (1983) ). In Lydy, this Court explained that one reason the Supreme Court concluded that employer's payments into the union trust fund did not constitute a "similar advantage" under the federal workers' compensation law was that there was no way to value the benefit actually received by the employee deriving from the employer's contributions to that trust fund. Lydy, 2013 VT 44, ¶ 13, 194 Vt. 165, 76 A.3d 150 (citing Morrison-Knudsen, 461 U.S. at 631, 103 S.Ct. 2045 ). This Court analogized the health insurance benefit to the employer's contribution to the union trust fund in Morrison-Knudsen, and concluded that the value of the health insurance coverage actually received by the employee was likewise speculative. Id. ¶ 14.
¶ 16. The same cannot be said for the value of free tuition benefits. The undisputed record reflects that claimant herself received the free tuition benefit, and that the value to the employee of the benefit is readily ascertainable. Employer's policies specifically note that employer is responsible for tracking the benefit to the employee and reporting the imputed income on the employee's W-2 to the extent that it exceeds $5250 per calendar year.[4] Wholly independent of any workers' compensation claim, the record reflects that there is an established methodology for determining not the employer's costs-which were all that was known in Morrison-Knudsen-but the benefit to the employees. Moreover, the courses available to claimant are offered to Champlain College students more broadly at a set price. The "market value" of the courses, and the associated credits, is readily discernible in this case. For all of these reasons, our holding in Lydy does not compel a particular outcome in this case, and we must evaluate the Commissioner's determination in this case on its own merits.
*502 ¶ 17. The Commissioner's analysis is consistent with the plain language of the statute. See In re Porter, 2012 VT 97, ¶ 10, 192 Vt. 601, 70 A.3d 915 ("We first look to the plain language of the statute. If the meaning is clear, we enforce the statute according to its terms without resort to statutory construction." (citation omitted)). The Legislature's inclusion of broad language including "other advantages" an employee receives from the employer suggests a legislative recognition that the nonmonetary benefits that may be part of "wages" take a variety of forms, and are not limited to board, lodging and fuel. See Trombley v. Bellows Falls Union High Sch. Dist. No. 27, 160 Vt. 101, 104, 624 A.2d 857, 860 (1993) ("[W]e presume that language is inserted in a statute advisedly. Thus, we do not construe the statute in a way that renders a significant part of it pure surplusage." (citation omitted) (quotation omitted)). We have previously recognized that "wages" as defined in the workers' compensation statute include "benefits other than cash." Quinn v. Pate, 124 Vt. 121, 124, 197 A.2d 795, 797 (1964) (equating "wages" and "earnings," and noting that earnings can consist of "material objects or benefits other than cash"); see also 2 A. Larson & L. Larson, Larson's Workers' Compensation Law § 93.01(2)(a) (2012) ("In computing actual earnings as the beginning point of wage-basis calculations, there should be included not only wages and salary but any thing of value received as consideration for the work, as, for example, tips, bonuses, commissions and room and board, constituting real economic gain to the employee." (emphasis added)). The benefit at issue here-free tuition, leading to college or graduate level credits and perhaps a degree-is clearly an "advantage" of considerable economic value and, as noted above, its value can be estimated in money.
¶ 18. Moreover, claimant received the benefit as "remuneration." "To remunerate is to 'pay (a person) for goods provided, services rendered, or losses incurred'; remuneration is a 'payment.' " Lydy, 2013 VT 44, ¶ 12, 194 Vt. 165, 76 A.3d 150 (quoting The American Heritage Dictionary 1101 (New College ed. 1979)). In contrast to the benefit at issue in Morrison-Knudsen, on which this Court relied in Lydy, the benefit at issue here was provided directly to claimant, and it benefited her directly and quantifiably. It was part of her compensation paid in consideration of her work for employer.
¶ 19. The Commissioner's determination is also consistent with the purpose of the workers' compensation laws, which provide benefits to injured workers, including benefits designed to protect against an injured worker's loss of earning capacity, while shielding employers from tort law damages, including noneconomic damages. See id. ¶¶ 24-28 (Robinson, J., dissenting). The record is undisputed that free tuition was a substantial economic benefit to claimant and was one of the reasons she chose to work for employer. A worker who makes $20 per hour and receives free college tuition and a worker who makes $20 per hour and has to pay for college tuition out of pocket have very different earnings and are situated differently from an economic perspective. To the extent that the workers' compensation laws are designed to mitigate the economic losses sustained by injured workers, consideration of the value of the free tuition benefit in the wage calculation makes sense. Far from upsetting the workers' compensation laws' "delicate balance" between the interests of employers and employees, the Commissioner's approach serves the purpose of mitigating the injured worker's economic loss while protecting the employer against liability for indeterminate, noneconomic losses.
*503 ¶ 20. The Commissioner's conclusion is also consistent with the Department's own approach to other nonmonetary employment benefits. In Lyons v. American Flatbread, the Commissioner considered whether the value of massages provided by the employer as an employee benefit were included in wages. No. 36-03WC (Aug. 22, 2003), http://labor.vermont.gov/wordpress/wp-content/uploads//S-18824LyonsAll.pdf [https://perma.cc/ 7W3D-ESCS]. The Commissioner acknowledged its prior decision that health insurance is not an "other benefit" included within the definition of "wages," but concluded that the massages were. Id. at 9. In contrast to the health insurance benefit, the Commissioner reasoned, the massages "were actually received, had actual monetary value, and the employee actually benefited from that value." Id. Similarly, in Gaboric v. Stratton Mountain, the Commissioner considered whether the value of a free ski pass provided to an employee should be considered in the wage calculation. No. 12-04WC (April 26, 2004), http://labor.vermont.gov/wordpress/wp-content/uploads//S-08346-T-18904Gaboric.pdf [https://perma.cc/2VMW-6J24]. The Commissioner distinguished health insurance benefits, stating that the ski pass was a major reason why the employee (or the claimant) worked at the ski area, was a significant part of his compensation, and was an "advantage" that could be readily valued. Id. at 15. In both Lyons and Gaboric, the Commissioner emphasized the unique features of and caselaw concerning health insurance benefits that support the conclusion that health insurance benefits are not "other advantages" within the definition of wages. But in both cases, the Commissioner held that where the nonhealth-insurance benefits at issue had actual monetary value and were actually received by the employee, they fell within the broad "other advantages" language.
¶ 21. In advocating that this substantial and quantifiable component of compensation should not be included in the calculation of wages, the dissents offer new legal tests that effectively write the "other advantages" language out of the statute. They both suggest that benefits are only "other advantages" if expressly negotiated for in lieu of wages, and one argues that the benefits may only be considered part of compensation if they are "critical to protecting the employee's basic health and survival." Post, ¶ 32. Both arguments are flawed.
¶ 22. The argument that the employment benefit in this case is not part of wages because it is not offered in lieu of wages, and therefore employees receive the same pay whether or not they avail themselves of the benefit, rests on flawed legal and empirical assumptions.
¶ 23. The legal problem is that the language, purpose, and history of the workers' compensation statute do not support the asserted rule. Nothing in the statute purports to require evidence of an express wage-benefit trade-off before including the "other advantage." In fact, the benefits expressly listed alongside "other advantages"-"board, lodging, [and] fuel"-may be provided by employers without an express wage trade-off. 21 V.S.A. § 601(13). Even if a worker's acceptance of board and lodging has no impact on that worker's paycheck, the statute includes those benefits as part of "wages." Nothing in the statute suggests that the benefits are only part of wages if they result in reduced take-home pay. Insofar as "other advantages" should be understood in light of the expressly listed benefits, the canons of statutory construction do not support the dissents' proposals of a special limitation applicable only to "other advantages."
*504 ¶ 24. Nor does the purpose of the workers' compensation law support creating such a rule. One of the purposes of the workers' compensation law is to protect injured workers against short-term wage loss, and long-term lost earning capacity. See Bishop v. Town of Barre, 140 Vt. 564, 572, 442 A.2d 50, 53 (1982) ("The claimant correctly assigns protection against wage loss as one of the Act's purposes."). Even in the case of permanent disability benefits, which are awarded on the basis of schedules rather than individual future wage loss, we have explained that the touchstone is lost earning capacity and that the permanent disability benefit seeks to address that through conclusively proved schedules rather than relying on specific proof of an individual's actual wage-loss experience Id. at 572-73, 442 A.2d at 53-54 (quoting 2 A. Larson, Workmen's Compensation Law § 58.11, at 10-173 to 10-174 (1981)). To promote this goal, the Commissioner in this case asked whether the employment benefit is significant, provides true value to the worker, and is determinable. These are the right questions because they get at what the workers' compensation statute is trying to accomplish: restoring earnings or earning capacity. A worker who earns $500 per week, and a worker who earns $500 per week and takes advantage of free tuition to take courses and earn college credits, do not stand in the same shoes with respect to the earnings they derive from their work any more than a worker who earns $500 per week and a worker who earns $1000 per week. In both cases, the goal of the workers' compensation statute is advanced by reflecting the differences in the respective workers' effective earnings. Not doing so would result in a greater uncompensated loss for the worker for whom free tuition was a significant portion of compensation than for the similarly situated worker whose take-home pay is the same but who does not receive the additional significant and determinable value from the employer.
¶ 25. And finally, the application of Vermont's workers' compensation statute for decades does not support the dissents' broad exclusion of employer-provided benefits from the scope of "other advantages." See, e.g., Lyons, No. 36-03WC, slip op. at 9 (employer-provided massages are "other advantage" within definition of wages); Gaboric v. Stratton Mountain, No. 12-04WC, slip op. at 15 (free ski pass provided to employee is "other advantage.").
¶ 26. The empirical problem with the dissents' argument is that it rests on an assumption that people, like claimant here, agree to accept a job and a level of pay for employers like Champlain College without regard to the availability of free tuition. The benefit is a perk that they may happen to stumble into, but is not part of a cash-wage/benefit tradeoff that informs the decision to accept employment on those terms. The dissents cite no empirical evidence to support this claim, and it flies in the face of common sense. One of the reasons the Commissioner's focus on the significance of the benefit, and whether claimant has actually derived true value from the benefit, makes sense is that an affirmative answer to both of these questions strongly supports an inference that the benefit-in this case, tuition-is part of the employee's cash-wage/benefit tradeoff calculus. And, it stands to reason that where an employer is able to offer a benefit such as free tuition that is valuable to many workers and prospective workers, the employer is better positioned to maintain at- or below-market cash wages. Our opinion does not rest on this assumption-it is no more supported than the contrary assumption made by the dissents. But it does highlight the problems with a legal rule that rests on an evaluation of the *505 extent to which the availability of the benefit and wages are related.
¶ 27. Likewise, the suggestion that "other advantages" should include only those benefits that are "critical to protecting the employee's basic health and survival" is inconsistent with the nature and purpose of those laws. The workers' compensation law reflects a trade-off between management and labor: injured workers forfeit their common-law right to sue employers for negligence and the tort damages associated with those claims, but are entitled to a remedy for work injuries independent of fault; for their part, employers are shielded from liability for tort damages and instead face a limited and determinate liability. See 21 V.S.A. § 622 (explaining rights and remedies granted by provision of chapter are exclusive to "all other rights and remedies of the employee"); In re Chatham Woods Holdings, LLC, 2008 VT 70, ¶ 9, 184 Vt. 163, 955 A.2d 1183. The result of this trade-off is an insurance system, not a social welfare program. Although it may reinforce part of the social safety net, it is not itself a safety-net program. Individuals with high pre-injury earnings may be entitled to very substantial benefits-far greater than could be justified as necessary to their basic health and survival. The current maximum weekly benefit for an injured worker out of work on temporary total disability benefits is $1,281-translating to annualized earnings of over $65,000-tax free. See Vt. Dep't of Labor, Minimum & Maximum Comp. Rates: Annual Change, http://labor.vermont.gov/wordpress/wp-content/uploads/historicalrates.pdf [https://perma.cc/6GWQ-BETB]; see also 21 V.S.A. § 601(18) (defining "maximum weekly compensation" to be 150% of the state average wage). The notion that "other advantages" should be limited to benefits essential to subsistence is out of synch with the broader workers' compensation scheme.
¶ 28. Given the above considerations, we conclude that the Commissioner's determination was not unreasonable and is entitled to our deference.
Affirmed.

Employer's Tuition Benefits policy contains separate provisions governing undergraduate tuition for employees, undergraduate tuition for employees' family members, graduate tuition for family members, tuition assistance for study at other accredited institutions, and partial tuition reimbursement for studies toward a doctoral degree. Because these other provisions are not directly implicated in this case, we do not further describe or reproduce them.

Claimant concedes that the value of the benefit should not be included in the average weekly wage calculation for the purposes of temporary total disability benefits because employer continued to provide the benefit during her period of temporary total disability benefits. Workers' Compensation Rules 8.1130, Code of Vt. Rules 24 010 003, http://www.lexisnexis.com/hottopics/codeofvtrules. See, e.g., Donovan v. AMN Health Care, No. 12-11WC (May 26, 2011), http://labor.vermont.gov/wordpress/wpcontent/uploads//DonovanMSJ.pdf [https://perma.cc/4A6H-SRP5] (recognizing that value of a benefit may be included in average weekly wage calculation for purposes of permanent partial disability benefits but excluded from calculation for purposes of temporary total disability benefits if claimant continues to receive benefit during period of temporary total disability).

In reaching this conclusion the Commissioner referred to a section of employer's tuition benefit program providing for tuition assistance at other accredited institutions besides Champlain College. Although that provision does not directly apply in this case, for the reasons set forth below, the Commissioner's reasoning applies as fully to the section at issue in this case.

Employer is correct that in concluding that the free tuition benefits were readily subject to valuation the Commissioner looked to a section of employer's tuition-benefit policy that does not apply in this case. However, as noted above, the text of the section that does apply in this case also reinforces that the tuition benefit can be readily valued.