NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2018 VT 26

No. 2016-036

| | |
|---|---|
| Catherine Lyons | Supreme Court |
| v. | On Appeal from Commissioner of Labor |
| Chittenden Central Supervisory Union | September Term, 2016 |

Anne M. Noonan, Commissioner

Kevin E. Brown and Michele B. Patton of Langrock Sperry & Wool, LLP, Middlebury, for Plaintiff-Appellant.

Jason R. Ferreira and Robert G. Reagan of McCormick, Fitzpatrick, Kasper & Burchard, P.C., Burlington, for Defendant-Appellee.

PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.

¶ 1.    **DOOLEY, J.**  Claimant Catherine Lyons appeals a summary judgment decision by the Department of Labor Commissioner (the Commissioner) finding that she did not qualify for workers' compensation benefits for an injury sustained while student teaching at a school in the defendant supervisory union. Because we hold that claimant falls within the statutory definition of an employee for purposes of workers' compensation, we reverse and remand for further proceedings in accord with this opinion.

¶ 2.    The relevant facts are undisputed. Claimant has a master's degree in early childhood education and taught for six years in New Hampshire. In 2013, she decided to pursue an elementary education teaching license in Vermont. Vermont Agency of Education (AOE)

regulations require three basic components for licensure as a teacher: first, the applicant must hold a bachelor's degree in either the liberal arts and sciences or in the area that they will teach; second, they must provide proof of student teaching; and third, the applicant must demonstrate competency in ten specified areas.[1] Vermont Agency of Education, Licensing of Educators and the Preparation of Educational Professionals §§ 5231, 5233, 5235, Code of Vt. Rules 22 000 010, http://www.lexisnexis.com/hottopics/michie/. Licensing regulations at the time plaintiff sought licensure required the applicant to complete twelve weeks of student teaching, defined as "supervised, concentrated field experience . . . including an internship, or other concentrated field experience however named, in which the candidate shall gradually assume the full professional roles and responsibilities of an educator." Id. § 5233.1[2]; id. § 5150. To satisfy competency and student teaching requirements, claimant enrolled in a two-semester program at the Upper Valley Educators Institute (UVEI) that prepares enrollees for licensure through classroom placement and seminar-based competency instruction.

¶ 3.     UVEI's teacher program handbook refers to its trainees as interns; an intern is "a professional with prior experience who is developing his or her talents to become a teacher." Each intern is placed in two different classrooms during the UVEI program, one during the program's fall semester and a second during the spring semester. The intern works with a different mentor-teacher in each classroom, who invites the intern "into the classroom to learn—and begin to practice—the craft of teaching." Interns are placed in the classroom four days each week; on the

---

[1]     The ten competencies are learner development, learning differences, learning environments, content knowledge, application of content, assessment, planning for instruction, instructional strategies, professional learning and ethical practice, and leadership and collaboration. Regulations describe each. See Vermont Agency of Education, Licensing of Educators and the Preparation of Educational Professionals § 5235, Code of Vt. Rules 22 000 010, http://www.lexisnexis.com/hottopics/michie/.

[2]     Rule 5233.1 was amended in 2015. The current version of the rule requires thirteen weeks of student teaching experience.

fifth day, they are required to attend seminars at the UVEI campus. These seminars address the competency requirement for licensure. Total tuition for the program is $15,000; enrollees also pay a $250 fee for UVEI to help them locate placement classrooms.

¶ 4. As an agency-approved educator preparation program, UVEI must comply with AOE regulations governing the way license applicants are placed in student teaching positions. Specifically, student teachers must be placed with a licensed educator who has been trained by the educator preparation program in the methods and strategies taught in the program. Student teaching expectations and the placement process must be included in a handbook, and a written agreement with the placement school must be executed that lists each party's responsibilities. Id. § 5924.3. Pursuant to these regulations, UVEI distributed a Teacher Internship Program Handbook that outlined intern and mentor-teacher responsibilities, and had all placement participants—including the intern, mentor-teacher, placement site representative, and a UVEI-assigned faculty coach—sign a placement contract.

¶ 5. Upon enrolling in UVEI's teacher internship program, claimant contacted a kindergarten teacher for whom she had previously substitute taught at one of Chittenden Central Supervisory Union's (CCSU) schools. Claimant and the kindergarten teacher agreed that claimant could complete her first student teaching semester in the teacher's classroom if claimant met the application requirements imposed by CCSU.

¶ 6. In a procedure that mimics most job searches, CCSU requires trainee teachers, such as claimant, to submit an application for student teaching on a standard form.[3] Applicants must

---

[3] The Commissioner noted in her decision that student teaching applicants were permitted to submit an application completed through their training program instead of the standard CCSU application. In this case, there is no evidence of a completed CCSU application in the record, and we assume, as the Commissioner did, that claimant completed an application through UVEI. Since there is likewise no evidence that claimant's application process deviated in any other way from the CCSU requirements, we also assume that defendant required claimant to go through the rest of the standard interview and placement process.

list their education and experience, answer a series of questions concerning past criminal activity, and write a one-page essay describing their reasons for wanting to teach and commitment to or experience working with children and young people. This application is submitted directly to the principal of the school where a trainee teacher seeks placement and the school then interviews those applicants it is interested in placing. According to the CCSU student teacher application process, "the purpose of the [interview] is to ensure the placement will result in a good match between [the applicant], the school, and the cooperating teacher, which is necessary to increase [the applicant's] chances for success." Supervisory union human resources personnel are not involved in the interview or placement process; instead the selection of student teacher applicants is left to the school principal and classroom teacher.

¶ 7.    We find it important to note that claimant's position is named and described in different ways in the record. The Commissioner found that defendant considered claimant to be a preservice teacher, a term that includes interns, student teachers, and post-baccalaureates. The policy on which the Commissioner relied refers to claimant's position as a student teacher and her activities as student teaching. Claimant submitted an application for student teaching pursuant to a Student Teacher Application Process. At one point, the application states: "If hired prior to the completion of the background check process, continued employment would be contingent upon satisfactory background check results."

¶ 8.    As we noted above, the UVEI Teacher Program Handbook defines claimant as an intern. It goes on to say that "[a]n intern has more responsibility, more independence, and more self-direction than most students." The handbook in a number of places describes the intern as working. As an example, the handbook states interns "work with small groups of students, instruct classes, handle crises, and otherwise function as real teachers."

¶ 9.    After passing through CCSU's application and screening process, claimant, her mentor-teacher, the placement school principal, and claimant's UVEI faculty coach signed a

4

placement contract agreeing to the terms outlined in UVEI's program handbook. The handbook lists the responsibilities of both the UVEI intern and the mentor-teacher; specifically, it requires the intern to work the same hours as their mentor-teacher, to attend staff and planning meetings, as well as in-service days and school activities. Each intern's classroom responsibilities are meant to increase over time, culminating in a one-to-two-week period of solo teaching in the classroom. While interning at her placement school, claimant had a CCSU identification badge and email address, access to confidential student files, and keys to both the school and her mentor-teacher's classroom. However, in agreement with the guidelines in UVEI's program handbook, claimant was not permitted to write any reports or documents that would become part of a student's official record.

¶ 10.   Claimant injured her back, hip, and leg in a workplace slip and fall accident not long after she began her teaching internship. She filed a workers' compensation claim, which the defendant's insurer contested. Claimant appealed the denial of her claim to the Department of Labor, and the parties filed cross motions for summary judgment on the sole question of whether claimant qualified as an employee under the relevant statutory definition. Neither party disputed that CCSU falls within the statutory definition of an employer for purposes of workers' compensation nor that claimant's injury, if she could be considered an employee, occurred accidentally during the normal course of her employment.

¶ 11.   The Commissioner issued a written decision granting defendant summary judgment and dismissing claimant's claim for workers' compensation benefits. The Commissioner's decision turned on the undisputed fact that claimant did not receive monetary wages for her work at the defendant supervisory union. The Commissioner found that, though the tripartite agreement between claimant, defendant, and UVEI bore many of the hallmarks of an employment contract, "absent actual or expected payment of some form of remuneration by employer to employee, an employment relationship does not exist, and workers' compensation coverage does not attach."

5

According to the Commissioner, limiting workers' compensation benefits to paid employees implements the statute's underlying "assumption that a worker is gainfully employed at the time of his or her injury" as well as the practical difficulty of monetizing compensation for a worker who is not receiving financial payment. This appeal followed.

¶ 12. We review summary judgment decisions "de novo, applying the same standard as the trial court." DeBartolo v. Underwriters at Lloyd's of London, 2007 VT 31, ¶ 8, 181 Vt. 609, 925 A.2d 1018 (mem.). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a). This appeal concerns a question of law; we review the Commissioner's conclusions regarding questions of law de novo. Smedberg v. Detlef's Custodial Serv., Inc., 2007 VT 99, ¶ 23, 182 Vt. 349, 940 A.2d 674.

¶ 13. We owe the Commissioner's interpretation of the workers' compensation program deference because the Legislature has tasked the Commissioner with administration of the program. Letourneau v. A.N. Deringer/Wausau Ins. Co., 2008 VT 106, ¶ 8, 184 Vt. 422, 966 A.2d 133; see also Town of Killington v. Dep't of Taxes, 2003 VT 88, ¶ 5, 176 Vt. 70, 838 A.2d 91 ("Absent a clear and convincing showing to the contrary, decisions made within the expertise of agencies are presumed correct, valid and reasonable." (quotation and alterations omitted)). We will not set aside the Commissioner's interpretation or application of the statute "absent a compelling indication of error." Brown v. W.T. Martin Plumbing & Heating, Inc., 2013 VT 38, ¶ 18, 194 Vt. 12, 72 A.3d 346. Our task is to ensure that a statute's enacting purpose is given effect, and we do so by "examin[ing] and consider[ing] fairly, not just isolated sentences or phrases, but the whole and every part of the statute, . . . together with other statutes standing in pari materia with it, as parts of a unified statutory system." Id. ¶ 20 (quotation omitted).

¶ 14. The workers' compensation program has rightly been called a "grand bargain." See P. Gillies, Ruminations: The Centennial of Workers' Compensation in Vermont, 41 Vt. Bar. J. 10

(Summer, 2015). In exchange for no-fault liability, employers guarantee workers accidentally injured during the normal course of employment insurer-provided wage replacement and medical and other benefits. See 21 V.S.A. §§ 618(a)(1), 622. The statute defines a "worker" or "employee" as "an individual who has entered into the employment of, or works under contract of service or apprenticeship with, an employer." Id. § 601(14). As the Commissioner noted, we have never considered whether a preprofessional trainee in a working environment qualifies as a worker or employee under the workers' compensation program. We have, however, held that "the Workmen's Compensation Act, having benevolent objectives, is remedial in nature and must be given a liberal construction; no injured employee should be excluded unless the law clearly intends such an exclusion or termination of benefits." Montgomery v. Brinver Corp., 142 Vt. 461, 463, 457 A.2d 644, 646 (1983).

¶ 15. The basic entitlement to workers' compensation is contained in 21 V.S.A. § 618(a)(1): "If a worker receives a personal injury by accident arising out of and in the course of employment by an employer subject to this chapter, the employer or the insurance carrier shall pay compensation in the amounts and to the person hereinafter specified." The Commissioner's decision in this case relies upon two other statutes. The first is 21 V.S.A. § 601(14), which defines worker or employee, and is set out in the foregoing paragraph.[4] The second is 21 V.S.A. § 601(13), which defines wages: " 'Wages' includes bonuses and the market value of board, lodging, fuel, and other advantages which can be estimated in money and which the employee receives from the employer as a part of his or her remuneration . . . ."

¶ 16. The Commissioner's decision is based on the rationale that a distinction must be drawn between an employee, who can receive workers' compensation, and a gratuitous worker,

_____

[4] The Workers' Compensation Act defines both employer and employment. See 21 V.S.A. §§ 601(3), (4) (defining "employer" and "employment" respectively). Neither the Commissioner nor the parties found those definitions relevant to the decision in this case. We agree.

7

who cannot. In addressing this distinction, the Commissioner explored the difference between "remuneration" and "wages," the key words in § 601(13). It is clear from that section of the statute that "remuneration" is the broader term, with wages being only part of remuneration, such that "anything of value can [conceivably] qualify" as remuneration. The Commissioner concluded that "the opportunity to fulfill [a] state-mandated licensure requirement" is remuneration,[5] but is not wages because "the value of a student teaching internship cannot be estimated 'in money' " as required by § 601(13). The Commissioner then concluded that without wages, a claimant cannot be eligible for either indemnity or vocational rehabilitation benefits under the statutory scheme. The Commissioner also indicated concern that a decision that claimant was entitled to workers' compensation would cut off the right of a volunteer to bring a tort action where an injury was based on negligence for which the employer was responsible.

¶ 17. Claimant challenges all steps in the Commissioner's analysis. She argues that she was an employee, worked under a contract of service and as an apprentice, and that wages are not required for any of these prongs of the statutory definition. She further argues that if wages are

_____

[5] We recognize that parts of the Commissioner's decision use the terms "remuneration" and "wages" interchangeably and suggest that the Commissioner did not find remuneration. Thus, in paragraph 11, the Commissioner states that the better view is to deny workers' compensation if the only remuneration to which the school district "agree[s] is the opportunity to fulfill . . . state-mandated license requirements." On the other hand, in paragraph 18, the Commissioner states: "Defendant did not thereby intend for her placement itself to constitute 'wages.' Because the key element of actual or expected remuneration is missing, I therefore conclude that no 'contract of service' sufficient to create an employment relationship existed between them." Although these later statements might be interpreted as concluding that there was no remuneration, they are based on the mistaken understanding that the presence of wages is a required element of remuneration. In fact, the structure of § 601(13) makes clear that remuneration is the broader term so that there can be remuneration without wages. Our conclusion that the Commissioner found remuneration is based both on a reading of the Commissioner's decision as a whole and her reliance on the absence of wages because the advantages claimant received could not be valued in money.

We add that this question is not central to our decision but relates more to the standard of review. If we addressed the question of remuneration de novo, we would follow the decisions that have found remuneration in equivalent circumstances. See Hallal v. RDV Sports, Inc., 682 So. 2d 1235, 1237 (Fla. Dist. Ct. App. 1996); Olsson v. Nyack Hosp., 598 N.Y.S.2d 348, 349 (App. Div. 1993).

8

required, the completion of her student teaching responsibilities to achieve licensure is a sufficient benefit to be wages and the value of that completion can be estimated in money as required by 21 V.S.A. § 601(13).

¶ 18. We share the Commissioner's concern that we must minimize the risk of upsetting the balance set by the Legislature between creating a remedy for an injured worker without proof of fault and continuing fault-based liability where appropriate. Thus, we decide this case narrowly and do not reach many of claimant's arguments.[6] There is no dispute that, apart from the issue of wages, there is present here a contract for service, as required in § 601(14) to find claimant was an employee or worker. The parties entered into a formal contract, and its terms specified that claimant would provide specific services, and that specific services would be provided to her. Whatever title is used to describe claimant's position, the relationship between the parties was governed by a service contract.

¶ 19. We also agree that claimant received remuneration. We recently defined remuneration for purposes of § 601(13) as payment for services. Lydy v. Trustaff, Inc./Wausau Ins. Co., 2013 VT 44, ¶ 12, 194 Vt. 165, 76 A.3d 150. As the Commissioner decided, this payment could be made in a form other than money. Here, CCSU provided claimant with teaching experience and mentoring necessary for her to become a licensed teacher. We conclude, as the Commissioner did, that this payment qualified as remuneration.

---

[6] This approach fundamentally separates us from the rationale of the concurring opinion. That opinion adopts a very broad dictionary definition of the term "apprentice." As we read the concurrence, any person who works for experience with no other compensation would be an apprentice who is automatically covered by workers compensation with respect to a workplace injury but has lost the ability to bring a tort action against the employer no matter how great the fault of the employer in causing the workplace injury and no matter how great the injuries. It applies to work where the risk of personal injury is great, as well as to work where it is not. See Wolfe v. Yudichak, 153 Vt. 235, 571 A.2d 592 (1989). We neither endorse nor reject the rationale of the concurrence but prefer a much narrower rationale that does not decide the availability of tort remedies for a broad class of persons who are not before the Court in this action.

¶ 20. Finally, we agree with the Commissioner that claimant must prove that she received wages.[7] The system of workers' compensation provides for the partial replacement of wages as indemnity for injuries from a qualifying accident. Without receipt of wages, there can be no indemnity. We held as much in Wolfe v. Yudichak, a case involving the eligibility for workers' compensation of a university student who worked without compensation for a university volunteer fire department and was seriously injured when a fire engine in which he was riding overturned on the way to a fire. 153 Vt. at 241-42, 571 A.2d at 596. In Wolfe, the university argued that it could not be sued for negligence by the student because he was eligible for workers' compensation. We held that the student was not eligible for workers' compensation for multiple reasons, including that because he received no wages, he could not receive indemnity benefits. We accept that Wolfe controls here, and as the Commissioner held, claimant could not receive any indemnity benefits if she received no wages.[8] With this understanding of the areas of agreement with the decision of the Commissioner, we address the issue before us—whether claimant has received "wages" as defined in 21 V.S.A. § 601(13). This issue depends upon whether the student teaching opportunity was (1) an "other advantage," and (2) if so, its value could be "estimated in money."

¶ 21. Our understanding of both of these questions is greatly aided by the recent decision in Haller v. Champlain College, 2017 VT 86, __ Vt. __, __ A.3d __. Although Haller dealt with the amount of wages earned by a worker, and as a result the amount of compensation the worker

---

[7] The Commissioner ruled that entitlement to medical benefits alone, without lost wages, would be sufficient to make claimant eligible for monetary compensation. Again, we accept this conclusion for purposes of this decision, without addressing it.

[8] This is our second point of difference with the concurring opinion. The controlling statute defines an employee as one who has entered into the employment of an employer or "works under contract of service or apprenticeship with" an employer. 21 V.S.A. § 601(14). This is the only reference to an apprentice or apprenticeship anywhere in the workers' compensation statutes. The concurrence argues that even if wages are required for a contract of service, they are not required for an apprenticeship. We can find nothing in the statutory language that supports such a distinction. If wages are required for a contract of service, as we held in Wolfe, we see no ground to hold that they are not required for an apprenticeship.

10

would receive based on the amount of wages, the decision construed § 601(13) and applied facts with significant similarities to those before us in this case. In Haller, the College employer offered staff and dependents of staff the opportunity to take courses at the College without paying tuition, and the worker took advantage of this policy by taking a number of courses without paying tuition. When the worker was injured and became eligible for workers' compensation, she claimed that her wages for the period on which the amount of her benefits would be calculated should include the value of these courses. Her argument was that the courses were an "other advantage" and their value could be estimated in money, meeting the requirements of § 601(13). We agreed with both parts of her argument. With respect to the "other advantage" claim we held that the plain meaning of the term included the tuition-free college courses. Haller, 2017 VT 86, ¶ 17. We noted that the statute does not limit advantages to "board, lodging and fuel" and there is no requirement that an "advantage" be provided in money. We held that the free-tuition courses were "clearly an 'advantage' of considerable economic value." Id.

¶ 22. We see no distinction between this case and Haller on the question of whether claimant received an advantage in the form of the student teacher position that was meeting the requirement for a teacher's license. The student teaching was of value to CCSU and of considerable economic value to claimant as a means of meeting the licensing requirement. See id. (" 'In computing actual earnings as the beginning point of wage-basis calculations, there should be included not only wages and salary but any thing of value received as consideration for the work, as, for example, tips, bonuses, commissions and room and board, constituting real economic gain to the employee.' " (quoting 2 A. Larson, Larson's Workers' Compensation Law § 93.01(2)(a) (2012) (alteration omitted))). Further, we do not read the Commissioner's decision as inconsistent with this conclusion.

¶ 23. This brings us to the second question, whether the value can be "estimated in money." In this summary judgment decision, the Commissioner concluded that the value of the

advantage claimant received could not be estimated in money, although she found that if claimant were "able to complete her student teaching activities and thereby fulfilled her licensure requirement, she would have reaped a tangible benefit." The analysis supporting the Commissioner's conclusion, to the extent it can be found in the decision, is found in the Commissioner's identification of the "test" to determine the question: "The test is whether both parties intended the benefit as 'wages.' "[9] Addressing the test, the Commissioner summarized that CCSU's human resources director in her deposition stated that the district never intended to create an employment relationship with any student teacher, including claimant. On the other hand, the Commissioner summarized that the relevant evidence offered by claimant was that coemployees were incredulous to learn that CCSU had denied claimant's workers' compensation claim because claimant was not an employee. Rejecting claimant's evidence, the Commissioner held that claimant had not raised a material issue of fact to show the test was met and granted summary judgment for CCSU.

¶ 24. Although we accept that whether the value of claimant's student teacher course can be estimated in money is a question of fact in some circumstances, we cannot accept that the test

---

[9] The Commissioner cited no decision from this Court or former Commissioner's decision as support for the "test." She did cite generally a decision of the New Hampshire Supreme Court, Appeal of Jenks, 965 A.2d 1073 (N.H. 2008). In Jenks, a claimant volunteered to provide security and cleaning services at a race track under an arrangement whereby the race track contributed seven dollars per hour to a specific charity for every hour of volunteer services. The claimant was injured while providing the volunteer services and sought workers' compensation from the track owner. New Hampshire statute required a "contract for hire" for a person to be an employee and had been interpreted to require that "claimant must have received or expected to receive payment of some kind." Id. at 1076. The Court held that the evidence supported the Compensation Appeals Board finding that the claimant neither received nor expected to receive any payment because the money was provided directly to the charity. Id. The alternative element of a contract for hire— "expected to receive" payment—involved a mental element which the Court described as intent at a number of points in the decision. Jenks involves a different statute, with different language, and a mental element different and narrower than that the Commissioner employed here. We do not believe it supports the Commissioner's decision.

of that fact is whether the parties intended an employment relationship.[10] We are applying a specific and detailed statutory scheme that contains specific definitions of "employment," "wages," "worker," and "employee." See 21 V.S.A. §§ 601(4), (13), (14). Nowhere in these statutes has the Legislature stated that the intent of the parties controls whether there is an employment relationship, whether there are wages, or whether the value of an advantage can be estimated in money. It is not contained in Haller, our most recent decision defining the elements of wages. Our responsibility is to apply the statutory language, not to create and employ a new element not contained in that language. Under our standard of review, we find compelling indication of error in the Commissioner's decision.

¶ 25. Our rejection of the Commissioner's rationale does not, however, determine our mandate. As we stated above, we agree that the Commissioner was faced with a question whether the value of claimant's advantage could be estimated in money. Both parties argued why the value could be or could not be estimated in money, but neither provided any factual support for the argument. Apparently, both believed that the question was one of law and no evidence was necessary. We can resolve the question here only if we can conclude as a matter of law that the value of claimant's advantage could or could not be estimated in money.

¶ 26. There are a number of important points that bear on this issue. The first comes from Haller. That decision restated that the value of an advantage must be the value to the claimant rather than the cost to the employer. It found that the value in that case could be measured by the cost to a student of each of the courses that the claimant received without paying any tuition. See

---

[10] We have reached this point attempting to follow the logic of the Commissioner's decision. CCSU argues that the Commissioner's decision was that she could not conclude that wages were present unless she found that the parties intended that wages be present. It cited a number of out-of-state court decisions requiring this element. As we state in the text below, however the argument is made, it runs up against the statutory language that does not contain such an element.

Haller, 2017 VT 86, ¶ 16 ("The 'market value' of the courses, and the associated credits, is readily discernible in this case.").

¶ 27. The second point involves the unique circumstances of this case. Here, claimant is arguing that she received an advantage, but the facts show that she paid for the ability to receive that advantage, not to CCSU but instead to another organization, UVEI, with which she contracted to meet the requirements of teacher licensure. The statute defines wages as advantages "which the employee receives <u>from the employer</u> as part of his or her remuneration." 21 V.S.A. § 601(13) (emphasis added). For purposes of our analysis, CCSU is claimant's employer, and it is providing the advantage of the student teacher position. It is this advantage we must value, without regard to claimant's payment to another to facilitate the advantage.

¶ 28. Third, the statute requires only that the value be "estimated." This is consistent with 21 V.S.A. § 650(a), which provides alternative methods of determining "average weekly wages" on which compensation amounts are calculated where the worker has been employed for only a short time or because of the terms of employment "it is impractical to compute the rate of remuneration." Thus, the estimate in money of the value of wages demonstrates that wages exist and are capable of rough measurement, but the actual compensation level may have a different basis.

¶ 29. In this case, the value of the twelve weeks of student teaching must be analyzed to determine the value to claimant rather than the cost to the school district. Claimant had completed her formal education and was qualified as a teacher, although she was not licensed to teach the content and at the grade level where she found that employment opportunities were available. Her twelve weeks as a student teacher would enable her to obtain the license she needed to teach at a grade level at which jobs were available. We are cognizant that courts in other jurisdictions have decided workers' compensation eligibility cases based on similar factual circumstances. In looking to other jurisdictions, we recognize that there are significant differences in how

jurisdictions define employment and eligibility for workers' compensation. For example, the requirement that advantages be capable of value estimated in money to determine wages appears in the statutes of only a few states, although the concept may be present in a different form. See, e.g., Idaho Stat. § 72-102(33). We have often turned to Professor Larson in his often-cited treatise on workers' compensation law to summarize the law around the country. On the question before us, he summarizes the law as follows:

> The element of payment, to satisfy the requirement of a contract of hire, need not be in money, but may be in anything of value. Board, room, and training, such as might be furnished a student nurse or hospital intern or laboratory assistant trainee, or a graduate student, or student teacher are treated as the equivalent of wages.

5 A. Larson, Larson's Workers Compensation Law § 65.03(1) (2016). In addition, we are particularly persuaded by the following decisions, which are on point and support our decision: Betts v. Ann Arbor Public Schools, 271 N.W.2d 498, 500-01 (Mich. 1978) (holding student teacher received remuneration, "[i]n return, plaintiff was paid in the form of training, college credits towards graduation, and the meeting of the prerequisites for a state provisional certificate"); Walls v. North Mississippi Medical Center, 568 So. 2d 712, 718 (Miss. 1990) (holding student nurse received remuneration and stating, "Walls, as an apprentice, rendered services to the hospital with the primary purpose of learning the 'business' of the hospital necessary to acquire her license as an LPN").

¶ 30. What separates this case from others where a claimant may have lost an educational opportunity as a result of an accident is the direct tie between the internship and a state license to teach. In this case of a person who has the required educational background and is an experienced teacher, the tie is so direct that the value of the internship can be estimated as the value of the license. Some courts have held that a professional license is an asset, capable of valuation by determining the earning capacity that is created by the license reduced to present value, primarily for distributing marital assets on divorce. See Brough v. Brough, 727 N.Y.S.2d 555, 557-58 (App.

15

Div. 2001) (teacher's license is marital asset to be valued by earning capacity it produces).[11]  The estimated value is normally determined by expert testimony.  Id. at 559.

¶ 31.   If this were a case where the loss of the educational opportunity were not so directly tied to the ability to obtain a license to practice a profession, we would conclude that the question of whether the lost advantage could be estimated in money would require separate factual development so that summary judgment would be inappropriate.  Where, however, the loss of the educational program equates to a loss of the license to practice a profession, we can say as a matter of law that the value of the lost advantage can be estimated in money.

¶ 32.   In summary, although we give deference to the Commissioner's construction of the workers' compensation statutes, we find compelling indications of error in the Commissioner's conclusion that claimant received no wages under the service contract claimant entered.  We reverse and remand to the Commissioner to determine the amount of benefits to which claimant is entitled.

Reversed and remanded for proceedings consistent with this opinion.

FOR THE COURT:

Associate Justice

¶ 33.   **ROBINSON, J., concurring in mandate only.**  I would reverse on the ground that claimant is a statutory employee under the workers' compensation laws because she worked under apprenticeship with Chittenden Central Supervisor Union.  The definition of "worker" and

---

[11]   The leading case adopting this method of valuing assets is O'Brien v. O'Brien, 489 N.E.2d 712 (N.Y. 1985).  The point here is not whether O'Brien is correct as a matter of family law.  Instead, the point is that courts following O'Brien have developed law on how to value a professional license.  On this point, the court in O'Brien observed: "fixing the present value of that enhanced earning capacity may present problems, [but] the problems are not insurmountable."  Id. at 718.

16

"employee" expressly encompasses people who work under <u>apprenticeship</u> with an employer. 21 V.S.A. § 601(14). Claimant is clearly an apprentice at CCSU. Contrary to the Commissioner's assertion, nothing in the definition of "apprentice" requires proof of payment of wages, or monetary remuneration.[12] Rather, the benefit or "other advantage" to the apprentice is statutorily presumed. This presumption leads to the same conclusion that the plurality reaches, but without the analytic perils intrinsic to the plurality's path. Because claimant is an apprentice within the statute, any debate about her remuneration, or wages, is beside the point. This approach is not necessarily broader than that adopted by the plurality. The dissent's arguments do not undermine this view. For these reasons, I concur in the plurality's reversal, though not its reasoning.

¶ 34. The definition of "worker" under the workers' compensation statutes includes "an individual who has entered into the employment of, or works under contract of service or apprenticeship with, an employer." 21 V.S.A. § 601(14). "Apprentice" is not defined in the statute, but Black's Law Dictionary describes "apprentice" as "[a] learner in any field of employment or business, esp[ecially] one who learns by hands-on experience or technical on-the-job training by one experienced in the field." Black's Law Dictionary (10th ed. 2014). Black's Law Dictionary specifically references "someone who works for an employer for a fixed period in order to learn a particular skill or job." <u>Id.</u>; see also <u>Apprentice</u> Dictionary.com, http://www.dictionary.com/browse/apprentice?s=t [https://perma.cc/LP38-94ET] (defining "apprentice" as "a person who works for another in order to learn a trade"); <u>Apprentice</u> Merriam-

---

[12] "Wages," as defined in the workers' compensation statutes, are essentially synonymous with "remuneration." See 21 V.S.A. § 601(13) (" 'Wages' includes bonuses and the market value of board, lodging, fuel, and other advantages which can be estimated in money and which the employee receives from the employer as a part of his or her remuneration."). As such, "wages" under the workers' compensation statute has a broader definition than the everyday meaning that focuses on money paid in exchange for work. While the undefined concept of "remuneration" could arguably extend to benefits received in exchange for work which cannot be estimated in money, such remuneration would have no legal significance in giving rise to a statutory employment relationship or in driving the average weekly wage calculation under the workers' compensation laws.

Webster.com, https://www.merriam-webster.com/dictionary/apprentice [https://perma.cc/8DQ2-SQ5R] (defining "apprentice" to include "one who is learning by practical experience under skilled workers a trade, art, or calling").

¶ 35. I cannot think of a more paradigmatic example of an apprentice than a student teacher assigned for a fixed term to a specific classroom under the tutelage of an experienced teacher for the purpose of improving her teaching skills and meeting state licensure requirements. Claimant and CCSU, through the principal of the Summit Street School, executed a written contract to accept claimant's placement for a fixed term, with a specified teacher serving as her mentor. Claimant's assigned teacher was to provide her training, mentorship, and supervised real-world teaching experience in the classroom. In exchange, claimant was to meet specified expectations and provide teaching services to CCSU students. The supervised teaching experience not only enriched claimant's training, it was a means of satisfying the student teaching component of Vermont's teacher licensing requirements. If this is not an apprenticeship, it's hard to imagine what would be.

¶ 36. The Commissioner's conclusion that apprentices are not subject to the benefits and burdens of the workers' compensation statute unless they receive additional remuneration beyond the training inherent in the apprenticeship is not supported, either expressly or implicitly, by the language of the statute and would render its inclusion of apprentices meaningless surplusage. It makes far more sense to understand the statute to establish as a matter of law that apprenticeship relationships fall within the workers' compensation statute—a conclusion that many courts have reached, even in the absence of explicit language to that effect.

¶ 37. Nothing in the statute states that remuneration is required for a contract of apprenticeship. The statute merely includes in the definition of "worker" or "employee" "an individual who . . . works under contract of . . . apprenticeship with, an employer." 21 V.S.A. § 601(14). In interpreting a statute, "we will not read terms into the statute unless necessary to

18

make the statute effective." Morin v. Essex Optical/The Hartford, 2005 VT 15, ¶ 7, 178 Vt. 29, 868 A.2d 729. The statute simply does not include a remuneration/wages requirement for apprenticeships.

¶ 38. Nor is a requirement of remuneration/wages beyond the training inherent in the apprenticeship relationship implicit in the concept of an apprentice. In describing the rationale for the "contract" and "hire" requirements in most workers' compensation statutes, Professor Larson expressly notes that some state statutes include individuals in service "under 'appointment' or 'apprenticeship,' " and cautions that the rules applicable to contracts for hire may not apply in those cases. 5 L. Larson & T. Robinson, Larson's Workers' Compensation Law § 64.01 n.1 (2017). As set forth more fully below, many courts that have applied statutes that include "apprenticeship" in the definition of employee have concluded that the training intrinsic to an apprenticeship satisfies any remuneration requirement as a matter of law.

¶ 39. To conclude otherwise would write the employment-by-apprenticeship track right out of the statute. As we have often emphasized, "[w]e presume that language is inserted advisedly and that the Legislature did not intend to create surplusage." McMurphy v. State, 171 Vt. 9, 12, 757 A.2d 1043, 1046 (2000). If all the components of a contract for service, or alternatively of an employment relationship, are necessary to establish an "apprenticeship," there would be no need to include "apprenticeship" in the statute at all. All apprenticeships would be, by definition, contracts for services (or employment relationships). As I note above, if this is not the case to invoke the apprenticeship provision as a distinct path to statutory employment, I can't imagine what would be.

¶ 40. The inclusion of "apprenticeship" in the definition of "employee" in 21 V.S.A. § 601(14) essentially reflects as a legal presumption what numerous courts have recognized: the training received by someone who otherwise meets the definition of "apprentice" is valuable consideration, or "remuneration." As Professor Larson notes, "The element of payment, to satisfy

19

the requirement of a contract of hire, need not be in money, but may be in anything of value. Board, room, and training, such as might be furnished a . . . student teacher are treated as the equivalent of wages." 5 L. Larson, supra, § 65.03. By including apprenticeship in the statute, the Legislature provided as a matter of law that apprentices operating under the direction and control of a statutory employer are covered by workers' compensation laws.

¶ 41.   Courts in states with workers' compensation statutes that extend to contracts of apprenticeship have reached the same conclusion on similar facts. For example, in Ryles v. Durham County Hospital Corporation, a respiratory therapy student at a technical institute was injured while working at a hospital where he was receiving on-the-job training. 420 S.E.2d 487 (N.C. Ct. App. 1992). As in this case, the student's program included both classroom work and an apprenticeship to allow the participants to apply their classroom knowledge in a hospital setting. The student's program required him to work three eight-hour shifts per week, during which he observed and then performed procedures under the supervision of a hospital therapist. While at the hospital, participants in the program were expected to master the range of skills needed to become a respiratory therapist. Patients were billed by the hospital the same amount regardless of whether the procedures were performed by an apprentice or by a regularly employed respiratory therapist.   In concluding that the student was an "apprentice" under the state workers' compensation statute, the court emphasized that, although he was not paid monetarily, the student "received the benefits of acquiring the practical skills required in accomplishing the tasks a respiratory therapist must perform." Id. at 490. The court reasoned that the hospital "received the same benefit it would receive from one of its regular employees," and that "[t]he trainees were expected to follow the same general rules and regulations governing regular employees." Id. The court concluded that "while [the student] may have been a student at [the technical institute], when he entered the hospital to perform respiratory therapy, his status changed to apprentice, making him subject to the Workers' Compensation Act." Id. at 491.

20

¶ 42.    The Mississippi Supreme Court reached a similar conclusion in Walls v. North Mississippi Medical Center, 568 So.2d 712 (Miss. 1990).  In that case, a student nurse received classroom instruction at a local college and clinical training as a student nurse at a medical center. In their clinical training, the student nurses were supervised by nursing instructors from the college, but they also received instructions from nurses who were employed at the medical center. They performed the same duties as hospital employees.  The student nurses received no clothes, room, board, tuition or monthly allowance.  Like Vermont, Mississippi's statutory definition of "employee" included individuals subject to a contract of apprenticeship.  Id. at 716.  The court held "that the attributes and legal consequences of an apprenticeship-employee" were present on these facts.  Id. at 718.  It explained:

> [The student nurse], as an apprentice, rendered services to the hospital with the primary purpose of learning the "business" of the hospital necessary to acquire her license as an LPN.  For the services rendered by [the student nurse], the hospital received payment from the public. [The student nurse] received a "similar advantage" (i.e., from the hospital giving rise to '"wages'" under a contract of hire as a matter of law).    This Court holds, therefore, that the employer/apprenticeship-employee relationship as defined in the Mississippi statute has been met.

Id.; see also Wright v. Wilson Mem'l Hosp., Inc., 226 S.E.2d 225, 226 (N.C. Ct. App. 1976) (holding that lab technician who worked in hospital to get practical on-the-job training as part of her training program was apprenticeship employee under statute that defined "employee" to include apprentices).

¶ 43.    This rationale is consistent with the conclusions of a number of courts—including the plurality here—that have recognized, even without an "apprenticeship" statute, that individuals like claimant providing services without pay or other benefits in exchange for specific and clearly defined training receive cognizable value for their services, and fit within the broad definition of "worker" in state workers' compensation laws.  For example, in Olsson v. Nyack Hospital, 598 N.Y.S.2d 348 (App. Div. 1993), an occupational therapist-in-training was placed at a hospital

21

where she served as a student intern. The hospital did not pay her any wages, but it did provide her with supervised learning experiences. The court concluded that the therapist-in-training was an employee because the hospital "selected the interns, retained the power to dismiss them, and controlled and supervised their work." Id. at 1006-07. It explained, "Though financial remuneration was not paid to plaintiff, it has been held that where, as here, necessary training and experience gained at the hospital is required for graduation and licensure, training is a thing of value and the equivalent of wages." Id.; see also In re Brewer's Case, 141 N.E.2d 281, 283 (Mass. 1957) (holding that student nurse who worked regular shifts under direction and control of hospital supervisors was student nurse, and noting that courts had uniformly held that student nurse is employee under workers' compensation laws).

¶ 44. Similarly, in Croston v. Montefiore Hospital, the court held that a technologist trainee, who worked in various sections of the hospital microbiology laboratory under supervision as part of her training, was an employee. 645 N.Y.S.2d 471, 472 (App. Div. 1996) (mem.). The court emphasized that "the hospital selected the trainees, retained exclusive power to dismiss them, and controlled and supervised their work, the product of which inured to the benefit of the hospital." Id. It explained that "although there was no financial remuneration for plaintiff's services, it has been held that the training and experience attained at the hospital, which is necessary for eventual technologist certification, is a thing of value and, therefore, equivalent to wages." Id.; see also Hallal v. RDV Sports, Inc., 682 So.2d 1235, 1237 (Fla. Dist. Ct. App. 1996) (noting that even if student intern had not received nominal monetary payment for his services, he would be employee because "such participation was necessary in order for him to satisfy the requirements of his degree"); Oelrich v. Schlagels, Inc., 426 N.W.2d 430, 433 (Minn. 1988) (concluding in case where employer was paid to provide on-the-job training that "a worker injured while performing services for the benefit of a trainer during an on-the-job training rehabilitation

22

program following a prior work injury is entitled to workers compensation benefits from the trainer").

¶ 45.    Finally, as the plurality emphasizes, <u>Betts v. Ann Arbor Public Schools</u> supports this conclusion.  271 N.W.2d 498 (Mich. 1978).  In <u>Betts</u>, a student teacher was injured at work. The court concluded that he was an employee, reasoning:

> Betts' relationship with the Ann Arbor Public Schools had the earmarks of a commercial relationship.  Betts was not a volunteer, nor was the school district required to accept a student teacher. Those who perform services gratuitously are generally excluded from the definition of "employee," but the payment necessary to establish a contract of hire need not be in money.  As Larson explains, "Compensation law . . . is a mutual arrangement between the employer and employee under which both give up and gain certain things."

<u>Id</u>. at 500.

¶ 46.    The court concurred with the administrative agency's analysis:

> [The school district] accepted [Betts'] beneficial services (teaching) for which compensation is normally paid or anticipated. This permitted . . . [plaintiff's supervising teacher] to perform other duties of benefit to defendant.  In return, [Betts] was paid in the form of training, college credits towards graduation, and the meeting of the prerequisites for a state provisional certificate.

> [Betts] . . . is an integral cog in [the school district's] business of education.  His teaching was part of the larger task of educating the young people of Ann Arbor.  The fact that the pay for this service was not in the coin of the realm but was in the form of training and qualification for a professional goal does not disqualify plaintiff from the designation of employee.  He was helping to furnish the product of education.

<u>Id</u>. at 500-01 (quotation omitted).

¶ 47.    The reason I believe we should rely directly on the "apprenticeship" prong of the definition of "employee," rather than the contract-for-services prong relied on by the plurality, is that the former presumes cognizable remuneration as a matter of law on the basis of the relationship between the parties.  The plurality makes a persuasive case that in this case claimant received a

23

benefit, or remuneration, in exchange for her services. But the statutory definition that it relies on—defining wages to include "other advantages"—requires that those other advantages "can be estimated in money." 21 V.S.A. § 601(13). In contrast to other cases in which we have a benchmark for valuing "other advantages," I am deeply skeptical that the value of the training an apprentice receives can be estimated in money. Cf. Haller v. Champlain College, 2017 VT 86, ¶ 16, __ Vt. __, __ A.3d __ (concluding that "market value" of college courses and associated credits is readily discernible, as courses are offered to students more broadly at set price); Lydy v. Trustaff, Inc./Wausau Ins. Co., 2013 VT 44, ¶ 36, 194 Vt. 165, 76 A.3d 150 (Robinson, J., dissenting) ("Health insurance premiums are a fixed sum paid by an employer, either exclusively or with contributions from the worker, that purchase a defined product on the insurance market, or through a regulated self-insurance plan resting on similar actuarial assumptions.").

¶ 48.    This approach is not necessarily broader or more unbounded than that espoused by the plurality. For the purposes of this case, we need decide only that this claimant—who is working under the tutelage of an experienced teacher for the purposes of learning a set of skills and satisfying the experiential prerequisites to state licensure—is an apprentice. Like the plurality's approach, this holding would potentially encompass trainees in other professions (including, until recently, the practice of law) who are required by state law to work under the direction of a licensed professional for a set period of time before they are eligible for their own licensure. The definition of "apprentice" may be limited by the same principle relied upon by the plurality in concluding that this claimant received benefits that can be estimated in money.[13]

¶ 49.    However, focusing on the definition of "apprentice," and its proper scope and parameters, would provide more clarity than a rule that allows for case-by-case factual development to determine whether the value of any identifiable benefit accruing to an individual

---

[13]  Because this case does not involve a trainee/worker whose service is not a prerequisite to licensure, we need not decide in this case whether the definition of "apprentice" extends further.

24

who performs services for another can be estimated in money. See Fotinopoulos v. Dep't of Corr., 174 Vt. 510, 511, 811 A.2d 1227, 1229 (2002) (describing dual goals of workers' compensation system to provide workers "a remedy that is 'expeditious and independent of proof of fault' and to provide employers 'a liability which is limited and determinate' " (quoting Morrisseau v. Legac, 123 Vt. 70, 76, 181 A.2d 53, 57 (1962)).

¶ 50.    Nothing in the dissent undermines this analysis. To the extent the dissent argues, as I have suggested above, that the value of a student teacher's training by CCSU is difficult to estimate, that argument does not apply under the apprenticeship prong of the definition of employee. For the reasons set forth below, the balance of the dissent's analysis does not jibe with the workers' compensation laws.

¶ 51.    The dissent rests its argument primarily on the absence of a common-law employer-employee relationship between claimant and CCSU. This approach ignores the express terms of Vermont's workers' compensation statute and fundamental principles of workers' compensation law, which clearly establish that a contractual, common law employer-employee relationship is not required between a statutory employer and employee. Vermont's workers' compensation statute defines "employer" to include "the owner or lessee of premises or other person who is virtually the proprietor or operator of the business there carried on, but who, by reason of there being an independent contractor or for any other reason, is not the direct employer of the workers there employed." 21 V.S.A. § 601(3). In our caselaw, we have made it clear that the proper focus should be the nature of the services provided by the claimant and whether the asserted employer exercised control over the operations a claimant was engaged in when injured, not on whether the asserted employer had a direct employment relationship with the claimant.

¶ 52.    For example, in Candido v. Polymers, Inc., this Court ruled that a manufacturer was the statutory employer for workers' compensation purposes of an individual who was directly employed by a temporary employment agency and who worked for the manufacturer pursuant to

25

an agreement between the employment agency and the manufacturer. 166 Vt. 15, 18, 687 A.2d 476, 478-79 (1996). This Court reached this conclusion even though the injured worker had no contractual relationship with the manufacturer and received no pay or benefits from the manufacturer. The Court emphasized that the worker accepted the manufacturer's direction and control, was supervised by the manufacturer, and worked alongside employees who were directly employed by the manufacturer. Id. at 20, 687 A.2d at 480.

¶ 53. Similarly, this Court considered a case of an individual who was injured while working for a trucking firm that had a contract to load and deliver merchandise for the Vermont Department of Liquor Control. Edson v. State, 2003 VT 32, 175 Vt. 330, 830 A.2d 671. In concluding that the State of Vermont, which clearly did not employ the injured worker, was nonetheless a statutory employer for workers' compensation purposes, this Court emphasized, "it is plain that [the worker] was injured while engaged in the State's business of distributing liquor to its local agencies." Id. ¶ 9; see also Vella v. Hartford Vt. Acquisitions, Inc., 2003 VT 108, ¶ 7, 176 Vt. 151, 838 A.2d 126 ("[T]he critical inquiry in determining whether an indirect employer is a 'statutory employer' as defined by § 601(3) is whether the type of work being carried out by the direct employer is the type of work that could have been carried out by the indirect employer's employees as part of the regular course of business." (quotation and alterations omitted)); King v. Snide, 144 Vt. 395, 401, 479 A.2d 752, 755 (1984) (explaining that whether proprietor of wood lot is statutory employer of individual who worked for logger with whom owner contracted, and who had no direct employment or contractual relationship with owner, turns on whether logging wood lot was within owner's regular trade or business).

¶ 54. By parsing the contractual or direct employment relationship between claimant and CCSU (or the absence thereof), the dissent departs from clear Legislative directive and well established caselaw, and implies that the definition of "statutory employer" under our workers' compensation laws only reaches common law employers. In this case, there is no dispute that

claimant worked alongside CCSU teachers, subject to the same rules, and performing many of the same functions under the supervision of a CCSU teacher. The dissent's focus on the absence of a direct contractual relationship between claimant and CCSU is a red herring.

¶ 55. For the reasons set forth above, I join in the plurality's holding that claimant's injury is compensable, and I concur in the mandate that the case be remanded to the Commissioner to determine the amount of benefits to which plaintiff is entitled.

_____
Associate Justice

¶ 56. **EATON, J., dissenting.** In this case, the plurality rewards Chittenden Central Supervisory Union for its largess in affording a student teacher, Catherine Lyons, the opportunity to gain classroom educational experience by holding that she was an employee of CCSU, thereby making CCSU responsible to provide her workers' compensation benefits. The plurality holds that claimant was CCSU's employee because she received remuneration from the school as a student teacher. I disagree for several reasons.

¶ 57. First, I do not believe an employer-employee relationship exists in the absence of the "employee" receiving any wages; whatever benefits claimant received from her student teaching experience were not quantifiable remuneration, and thus were not wages. Second, any benefits claimant garnered from her student teaching experience were not received from CCSU, and thus do not constitute "wages" under the Workers' Compensation Act. Finally, there is no evidence that claimant and CCSU intended to enter the type of employer-employee relationship the plurality creates here. Imposing this type of relationship on the parties would have negative implications for fault-based tort claims and a chilling effect on future student teaching opportunities. Thus, I cannot agree that CCSU was claimant's "employer," and would affirm the Department of Labor Commissioner's thoughtful decision denying compensation benefits.

27

¶ 58.    The plurality avoids answering a central issue in this case—whether an employment relationship can exist in the absence of any remuneration—by instead finding that the experiential and professional opportunity CCSU afforded claimant in allowing her to student teach in their facility constituted remuneration sufficient to create an employment relationship.  As the plurality notes, this determination is purely a question of law.  Smedberg v. Detlef's Custodial Serv., Inc., 2007 VT 99, ¶ 23, 182 Vt. 349, 940 A.2d 674.  As the plurality downplays, the determination made by the Commissioner, directly contrary to the plurality's position, is entitled to be upheld "absent a compelling indication of error."  Brown v. W.T. Martin Plumbing & Heating, Inc., 2013 VT 38, ¶ 18, 194 Vt. 12, 72 A.3d 346.  I find no error in the Commissioner's determination that there was no employment relationship under the facts of this case and certainly nothing that compels the different result the plurality reaches.

¶ 59.    As a starting point, decisions such as the one made by the Commissioner here are within the expertise of the Department of Labor; are presumed to be correct, valid, and reasonable; and should be overturned only upon a clear showing to the contrary.  Wood v. Fletcher Allen Health Care, 169 Vt. 419, 422, 739 A.2d 1201, 1204 (1999) ("The Commissioner's decision is presumed valid, to be overturned only if there is a clear showing to the contrary. We must defer to the Commissioner's construction of the workers' compensation statute absent a compelling indication of error." (emphasis added) (citation omitted)); see ante, ¶ 13 (affirming deferential standard Court applies to decisions of administrative agencies, such as Department).  At most, the plurality opinion merely reaches a different outcome from the Commissioner; it fails to establish either that the plurality result is compelled by the Department's clear error, or that the presumption traditionally afforded to the Department's interpretation of the applicable statutes is incorrect or unreasonable.  The plurality's decision pays lip service to the deference we have historically afforded to the Commissioner, but falls far short of showing the Commissioner's decision that no employment relationship existed was clearly wrong and in need of remand.

28

¶ 60.   I fully believe, as did the Commissioner, that remuneration of some kind is necessary to create an employer-employee relationship and thus an entitlement to workers' compensation benefits.[14]  Workers' compensation is a system that has, as a primary component, wage replacement for injured workers.  The Commissioner correctly recognized the restoration of wages "is the very essence of the protection that the system affords."  The plurality leaves that question for another day, but finds that remuneration from CCSU existed and that an employer-employee relationship was created.  I disagree.

¶ 61.   We have rightly held that no employee should be wrongly excluded from benefits. Montgomery v. Brinver Corp., 142 Vt. 461, 463, 457 A.2d 644, 646 (1983).  But that recognition does not give this Court license to apply a flexible standard to the determination of employment status.  We should not construe the Act unreasonably or in an unwarranted way.  Rothfarb v. Camp Awanee Inc., 116 Vt. 172, 180, 71 A.2d 569, 574 (1950), overruled on other grounds by Shaw v. Dutton Berry Farm, 160 Vt. 594, 632 A.2d 18 (1993).  The construction of the Act applied by the plurality is both unreasonable and unwarranted, creating a fictive remuneration and attributing it to a nonconsenting employer, resulting in an employment relationship where the parties did not contemplate it and the fact do not support it.

¶ 62.   "Wages includes bonuses and the market value of board, lodging, fuel, and other advantages which can be estimated in money and which the employee receives from the employer as a part of his or her remuneration."  21 V.S.A. § 601(13) (emphases added).  Thus, things other than cash received from the employer can nonetheless be wages if: (1) they are capable of being estimated in money, and (2) are received as part of the employee's remuneration.  This Court has concluded that "wages" as used in the Act is synonymous with "earnings."  Quinn v. Pate, 124 Vt.

---

[14]  The plurality is incorrect that the Commissioner found there was remuneration in this case, ante, ¶ 16.  The Commissioner found that "[b]ecause the key element of actual or expected remuneration is missing, I therefore conclude that no 'contract of service' sufficient to create an employment relationship existed between them."

121, 124, 197 A.2d 795, 797 ("Under the legislative definition of 'wages' . . . the term . . . is synonymous with 'earnings' . . . ."). The "other advantages" which the plurality uses as the basis to support the employer-employee relationship are only wages if they are earnings as part of the employee's remuneration. In Lydy v. Trustaff Inc./Wausau Ins. Co., we recognized that "[t]o remunerate is to 'pay (a person) for goods provided, services rendered, or losses incurred'; remuneration is a 'payment.'" 2013 VT 44, ¶ 12, 194 Vt. 165, 76 A.3d 150 (quoting The American Heritage Dictionary 1101 (New College ed. 1979)). Lyons's remuneration can be only one of two things, the value of her student teaching experience or the value of the State teaching certification. Neither are wages from CCSU.

¶ 63. The plurality parses the "benefits" Lyons received from student teaching to establish remuneration, but primarily bases its decision finding her to be CCSU's employee on two points: (1) receipt of an educational experience is tantamount to remuneration, going so far as to characterize the teaching experience and mentoring as payment, ante, ¶ 19; and (2) the ability to put a monetary value on claimant's state teaching certification satisfies the statutory requirement for quantifiable remuneration. Neither point withstands scrutiny. Experience is not remuneration.

¶ 64. The plurality stretches the scope of "remuneration" to create an employer-employee relationship that was not contemplated under the Workers' Compensation Act. Section 601(14) of the Workers' Compensation Act defines worker and employee as follows: "an individual who has entered into the employment of, or works under contract of service or apprenticeship with, an employer." 21 V.S.A. § 601(14). In straining to create an employment relationship, the plurality notes the various titles given to the position occupied by claimant, including preservice teacher, student teacher, and intern.[15] Respectfully, it does not matter what title is given to claimant's

---

[15] The plurality does not and cannot conclude that claimant was a teacher because teachers are afforded compensation benefits as public employees under the Workers' Compensation Act, but a "teacher" is only as the term is defined in 16 V.S.A. § 1931, a definition that does not include student teachers. 21 V.S.A. § 601(12)(H).

30

position under her agreement; she had no earnings in her relationship with CCSU, and thus cannot satisfy the requirements of 21 V.S.A. § 601(14). Whatever title is bestowed upon claimant's student teaching position, she was there to complete her educational goal of obtaining teaching certification from the State. Claimant was in the CCSU building as a student, having paid tuition to UVEI, and was part of UVEI's teacher internship program. She was not there for any other purpose.

¶ 65. Claimant was not receiving compensation of any kind from CCSU for her efforts as a student teacher; she had no earnings. Indeed, her efforts in her relationship with CCSU were not in connection with employment at all; she was in the school solely to fulfill her educational desire to achieve teaching certification through the student teacher process as a UVEI student.[16] On UVEI's promise of oversight, CCSU gratuitously hosted claimant in its classrooms, and claimant received a hands-on learning experience as the benefit of her tuition payment. Whatever benefits claimant gained from student teaching were not wages under the Act, earnings from working, or remuneration. These benefits were just what she expected to receive and what she fully paid for through her enrollment at UVEI.

¶ 66. The plurality argues that, if the monetary value of claimant's educational benefits from student teaching can be estimated, then the student teaching experience becomes remuneration. See ante, ¶¶ 19-22. This logic mischaracterizes the relationship between claimant, UVEI, and CCSU. Claimant entered into an agreement with UVEI to satisfy competency and student teaching requirements in the pursuit of licensure as a teacher. Claimant paid tuition to

---

[16] Under the plurality's rationale, it would appear that a student in any prerequisite course for licensure would be considered an employee of the organization providing the training. Is a student of a driving school injured in an auto accident an employee of the school because he or she is being mentored to obtain a driver's license? Similarly, the plurality's position appears to render the value of the "teaching experience" as constituting "wages" that could support a claim for unemployment benefits if the requisites of an unemployment claim were otherwise met. 21 V.S.A. § 1301(12).

UVEI to participate in their program and also paid a placement fee to UVEI to receive a voucher from them, enabling her to student teach in a classroom without licensure. See ante, ¶ 3. Even if the relationship between UVEI and claimant has a quantifiable monetary value—the cost of her tuition and fee—the relationship between Lyons and CCSU does not. Claimant paid UVEI for a product (preparation for licensure) and services (facilitating and monitoring her relationship with CCSU). At no point did claimant receive payment of any kind from CCSU; she had no earnings from them. She was neither working for a wage nor providing CCSU services; rather, she was receiving the benefit of her contractual bargain with UVEI while on site at CCSU, experience in preparation for licensure. It cannot be seriously contended that, before she was injured, claimant would have considered her student teaching experience to be earnings for which she might have a taxable consequence or that CCSU was required to report claimant as having earnings. We should recognize the relationship for what it was: claimant was a student of UVEI, placed in the CCSU system at CCSU's consent. She was no more the employee of CCSU than a student taking college courses is an employee of the school providing them.

¶ 67. Other facts beside the lack of remuneration support the Commissioner's determination that claimant was not CCSU's employee. The plurality recognizes CCSU's clearly expressed intention that no employment relationship was created through the student teacher position, but then discounts it by holding that that intention cannot control whether a student teacher meets the statutory requirements to be an employee. While I agree that CCSU's intention is not controlling, I disagree that CCSU's intention is not a valid consideration in the employment determination.

¶ 68. Whether an employee relationship exists is a mutual undertaking between employer and employee, not a unilateral one. The Commissioner quoted Professor Larson in its decision:

> Compensation law . . . is a mutual arrangement between the employer and employee under which both give up and gain certain things. Since the rights to be adjusted are reciprocal rights between

employer and employee, it is not only logical but mandatory to resort to the agreement between them to discover their relationship. To thrust upon a worker an employee status to which he has never consented would not ordinarily harm him in a vicarious liability suit by a stranger against his employer, but it might well deprive him of valuable rights under the compensation act, notably the right to sue his own employer for common-law damages.

3 L. Larson, Larson's Workers' Compensation § 64.01, at 64-2 (M. Bender rev. ed. 2010) (citations omitted).

¶ 69. The plurality recites claimant's responsibilities as a student teacher to support its determination that she was CCSU's employee, but does not give like discussion to the many salient facts in support of the Commissioner's determination that she was not CCSU's employee. Examination of the student teacher position reveals the following undisputed facts: claimant was receiving training to become a teacher, for which she was paying UVEI $15,000 in tuition plus a placement fee. At the time of this injury claimant was a student, not a teacher. No representative of CCSU ever told claimant that she was their employee; no document provided by CCSU ever represented that she was their employee; and the documents she received from UVEI expressly informed her that she was not an employee of either UVEI or the school in which she was placed. She received no wages or stipend from CCSU and there is no evidence she ever expected to receive any. She was not required to fill out a W-4 or an I-9 form to student teach. As a student teacher, she was prohibited from making entries into the students' permanent records, and she could not contact a student's parent without the permission of the classroom teacher. She was not eligible to join the teacher's union. She was not eligible for health care benefits. She was not eligible to participate in the teacher's retirement plan. Further, in her role as a student teacher, claimant was neither replacing a teaching position nor filling an identified need for one within CCSU. These facts also amply support the Commissioner's determination that claimant was not CCSU's employee.

¶ 70. It is important to emphasize the burden of proof to establish the employment relationship with CCSU rested with claimant; it was not on CCSU to disprove one. See Goodwin v. Fairbanks, Morse & Co., 123 Vt. 161, 166, 184 A.2d 220, 223 (1962) ("That the findings of the Commissioner are binding on this Court if sufficiently supported by evidence is beyond question; and it is equally true that the burden is on the claimant to establish the facts essential to the right asserted."). I do not believe it can be seriously contended that Lyons, as a tuition paying student of UVEI, thought she was an employee of CCSU in light of the facts outlined above. She was no more the employee of CCSU than any of the dozens of student teachers placed annually into Vermont public school districts through college student teaching courses are employees of the school districts who accept them into their schools.

¶ 71. The plurality relies upon two cases from other jurisdictions in support of its outcome—Betts v. Ann Arbor Public Schools, 271 N.W.2d 498, 500-01 (Mich. 1978), and Walls v. North Mississippi Medical Center, 568 So. 2d 712, 718 (Miss. 1990)—both of which are easily distinguishable. In Betts, the Supreme Court of Michigan held that a student teacher was an employee because he received remuneration from his site school in the form of training and college credits in preparation for certification. The court based its holding on the Michigan Workers' Disability Compensation Act, which defines a public "employee" as "[e]very person in the service of the state or of any county, city, township, village or school district, [u]nder any appointment, or contract of hire, express or implied, oral or written." Betts, 271 N.W.2d at 512 (quoting M.C.L. § 418(161)(1)(a)). Michigan's public "employee" statute, unlike Vermont's, applies to every person in the service of a school district under an appointment or an express or implied contract of hire. Vermont's statute, 21 V.S.A. § 601(12) contains no similar provision, but rather lists specific public employments, applying to teachers only as defined in 16 V.S.A. § 1931, a definition which does not include student teachers. The Michigan court found Betts had both an appointment and an implied contract of hire sufficient to render him an employee under their public "employee"

34

statute. Because of the significant statutory differences, <u>Betts</u> provides no support for the plurality's position.

¶ 72. Similarly, in <u>Walls</u>, the Supreme Court of Mississippi found that a student nurse was a hospital employee because she was an apprentice and she received remuneration in the form of "learning the 'business' of the hospital necessary to acquire her license as an LPN." <u>Walls</u>, 568 So. 2d at 718. The Mississippi court also grounded its decision in the "unique history and purpose" of educational programs for "interns, residents and clinical fellows in hospitals affiliated with medical schools, which . . . are fully accredited by the Council on Medical Education of the American Medical Association and by various specialty boards." <u>Id</u>. The court clearly considered trainees in the medical field "not to be primarily students, but rather to be apprenticeship employees within the meaning of the Workers' Compensation Act." <u>Id</u>. Here, the plurality does not rely on the theory that claimant was CCSU's apprentice under 21 V.S.A. § 601(14), and the unique features of medical internship programs are inapplicable in a school setting.

¶ 73. However, there is ample and persuasive authority to contradict the plurality's holding. In the more recent case, <u>Orange County School Board v. Powers</u>, 959 So. 2d 370, 371 (Fla. Dist. Ct. App. 2007), the court found that a university student working as an unpaid intern in a public school as part of her degree program was not an employee of the school board for workers compensation purposes, despite a Florida statute providing:

> A student who is enrolled in a state-approved teacher preparation program in [an] . . . educational institution . . . and who is jointly assigned . . . to perform a clinical field experience under the direction of a regularly employed and certified educator <u>shall</u>, while serving such supervised clinical field experience, <u>be accorded the same protection of law as that accorded to the certified educator</u> except for the right to bargain collectively as an employee of the district school board.

Fla. Stat. § 1012.39(3) (emphasis added). The court recognized that the student was at the school, like here, for purposes of completing her educational course work, not as an employee.

35

¶ 74. Similarly, compensation benefits were denied in <u>Dustin v. DCHI Home Health Services, Inc.</u>, 95-2198 (La. App. 1 Cir. 5/10/96); 673 So. 2d 356 (concluding that student of commercial school receiving clinical training in a medical center as part of his education, who contracted HIV, was not employee of the medical center); <u>Salvation Army v. Mathews</u>, 847 S.W.2d 751 (Ky. App. 1993) (finding that student nurse injured in slip-and-fall was unremunerated trainee, not employee or apprentice for compensation purposes); <u>Board of Education v. Industrial Commission</u>, 290 N.E.2d 247 (Ill. 1972) (finding that student completing volunteer work in public school as part of her academic training for degree in elementary education was not employee of Board of Education when injured in slip and fall); and <u>Henderson v. Jennie Edmundson Hospital</u>, 178 N.W.2d 429 (Iowa 1970) (holding that nurse's aide trainee who twisted her back was not employee of hospital where she received no wage and had not been promised a job at the end of her training). We should follow these decisions.

¶ 75. The other potential source for remuneration, the plurality's attempt to rely on the value of the teaching certification, also suffers from a fatal flaw. Even if we assume the benefits claimant received from pursuing her certification by student teaching were "other advantages" that were part of her remuneration, to constitute "wages" the advantage must be received "from the employer." 21 V.S.A. § 601(13).

¶ 76. The Commissioner found that receipt of state licensure was not capable of monetary valuation, and therefore was not wages under the Act. The plurality disagrees with that conclusion, but does not explain how, even if the certification is capable of monetary valuation, the certification for licensure awarded by the state is "other advantages . . . which the employee <u>receives from the employer</u> as part of his or her remuneration." <u>Id</u>. (emphasis added). The inability to monetarily value state licensure would be one reason it cannot be "wages" under 21 V.S.A. § 601(13). The concurrence has a deep skepticism that the value of the training can be estimated in money. I share that skepticism and then some. The plurality uses the "student teaching

36

experience" as a means to find remuneration, either from the training she received or the opportunity for licensure. But rather than quibble over whether there is a basis to determine a monetary value of the training or licensure, there is an additional fundamental problem with using either to support remuneration by CCSU. Regardless of whether the value of training or certification can be estimated in monetary terms, claimant could not receive, and was not intending or expecting to receive, her teaching certification from CCSU. Whatever the value of the certification, or the training leading to it may be, it is the State, not CCSU, that has the authority to grant claimant certification. The plurality completely overlooks that any "value" claimant received from student teaching in terms of obtaining teaching certification was not conveyed by CCSU. The teaching certification was a benefit to be conferred upon her by the State; it was not an "advantage" she received from CCSU. Therefore, even if a monetary value can be assigned to claimant's certification, the benefits are still not "wages" as defined in the Act because they did not come from her purported "employer," CCSU.[17]

¶ 77. The Commissioner considered the apprenticeship issue in granting summary judgment for CCSU, concluding that remuneration was still necessary even in an apprenticeship. The concurrence disagrees with this conclusion, but does not establish why the Commissioner's interpretation of the term is compellingly wrong. Here again, we have long recognized the deference afforded to the Commissioner in her initial interpretation of the compensation statutes. While our review of questions of law is de novo, nonetheless the deference afforded to the Commissioner's interpretation of statutory terms still plays an important role. Cyr v.

---

[17] The plurality asserts that the licensure claimant planned to receive can be quantified and the loss of the educational program equates to the loss of the license to practice a profession. The plurality never explains how this value should be calculated or whether it could be quantified as weekly wages. Additionally, the plurality bases a lost wage upon a licensure that had not occurred at the time of injury and would not have occurred absent the injury until sometime in the future, if at all. Thus, I remain unconvinced that anticipated state licensure has a quantifiable value sufficient to prove remuneration in the workers' compensation context.

McDermott's, Inc., 2010 VT 19, ¶ 13, 187 Vt. 392, 996 A.2d 709. Because "the Commissioner has been entrusted by the Legislature with the administration of the workers' compensation program, we owe substantial deference to her initial interpretation and application of" the workers' compensation statutes. Letourneau v. A.N. Deringer, 2008 VT 106, ¶ 8, 184 Vt. 422, 966 A.2d 133. Therefore, while we require the Commissioner's conclusions to reflect "the correct interpretation of the law," we will uphold the Commissioner's construction of the workers' compensation statutes "absent a compelling indication of error." Morin v. Essex Optical/The Hartford, 2005 VT 15, ¶ 4, 178 Vt. 29, 868 A.2d 729 (quotations omitted). The Commissioner's interpretation of the apprenticeship provision of 21 VSA § 601(14) was a reasonable one and we should follow it.

¶ 78. The concurrence decries the dissent for ignoring the statutory definition of employee, declaring the "approach ignores the express terms of Vermont's workers' compensation statute and fundamental principles of workers' compensation law, which clearly establish that a contractual, common-law employer-employee relationship is not required between a statutory employer and employee." Ante, ¶ 51. It then cites to the language of 21 V.S.A. § 601(3), which creates an employment relationship in the "owner or lessee of premises or other person who is virtually the proprietor or operator of the business there carried on, but who, by reason of there being an independent contractor or for any other reason, is not the direct employer of the workers there employed." The concurrence asserts the statutory definition of employer encompasses the situation presented here, citing to prior decisions of this Court. The concurrence overlooks a critical requirement of the statute, and a factor present in all of the cases it cites, which is entirely absent here. The definition of statutory employer expands the common-law concept of employer to encompass those who are "not the direct employer of the workers there employed." Ante, ¶ 51. But that expansive definition still requires a direct employment relationship with someone. In all the cases cited by the concurrence to support its statutory employer analysis, the injured worker

38

was working under a contract of hire by an entity and deemed to be the statutory employer of another. Edson v. State, 2003 VT 32, 175 Vt. 330, 830 A.2d 671; Vella v. Hartford Vt. Acquisitions, Inc., 2003 VT 108, 176 Vt. 151, 838 A.2d 126; Candido v. Polymers, Inc., 166 Vt. 15, 687 A.2d 476 (1996). Absent an employment relationship, either direct or indirect, there is no entitlement to compensation benefits. Claimant did not have an employment relationship with either CCSU or UVEI.

¶ 79. There are potential implications from this decision that cannot be ignored. First, as the Commissioner rightly noted, due to the exclusive remedy provisions of workers' compensation, there is the danger of creating precedent establishing an employment relationship where neither party likely intended it. The entitlement to compensation benefits serves at the same time to prevent claimant from filing nearly all fault-based claims against CCSU. The plurality's employment determination may serve to benefit claimant in this instance but work a profound hardship on the next injured student teacher by barring a tort claim against the school district due to the exclusive remedy provision of the Workers' Compensation Act, 21 V.S.A. § 622. We have recognized the significant impact the receipt of compensation benefits rather than a tort recovery may have. Wolfe v. Yudichak, 153 Vt. 235, 571 A.2d 592 (1989). Thus, we should expand the employer-employee relationship and its concomitant exclusive remedy provision advisedly.[18]

¶ 80. Aside from the disqualification from common law remedies that attend the plurality's holding, there is another important public policy consideration raised by this decision. In making a student teacher eligible for workers' compensation benefits, the plurality ignores the impact such a determination may have on a school district's willingness to allow student teachers into their buildings. Student teachers are not a way for school districts to fill teaching positions at

---

[18] This is not to suggest that the amount of employer fault or the extent of injuries should play any role in the determination of whether workers' compensation benefits apply. To the extent the plurality suggests otherwise, if it does, I disagree.

no cost to them. On the contrary, student teachers require supervision and mentoring by certified teachers, which those teachers agree to take on, in addition to their other teaching duties, for no additional remuneration. The decision to accept student teachers is, as the Commissioner correctly found, both a service and a detriment for the placement school. The result of this decision may well be that school districts, who are under no obligation to take on student teachers in the first instance, decide not to allow them into their schools. The reduction in student teaching opportunities, should it occur, will be an unfortunate legacy of this decision.

¶ 81. I freely acknowledge that the Workers' Compensation Act has benevolent objectives, is remedial in nature, and is to be liberally construed. Montgomery, 142 Vt. at 463, 457 A.2d at 646. But a liberal construction does not mean an unfair one. "Whatever virtue may arise from being liberal, I feel sure that it is less than that from being fair-minded." Orvis v. Hutchins, 123 Vt. 18, 24, 179 A.2d 470, 475 (1962) (Hurlburd, J., dissenting). Virtually since the Act's inception, it has been recognized that the Workers' Compensation Act must safeguard the rights of both employers and employees and that the provisions of the law as written must be given force. Petraska v. Nat'l Acme Co., 95 Vt. 76, 113 A.2d 536 (1921). I believe the fair outcome here, consistent with that duty to safeguard the rights of both employers and employees, and a fair reading of the definition of "wages" under the Act, is that this is not a compensable injury because claimant received no remuneration from CCSU and therefore was not an employee of CCSU and, accordingly, her injury did not arise out of and in the course of employment with CCSU.

¶ 82. I come to that conclusion even without deferring to the Commissioner's expertise. When we add to the mix the deference that the Commissioner's decision is clearly entitled to receive, along with a recognition that the burden of proof on this issue was on claimant, the outcome should not be in any doubt. The plurality acknowledges the "grand bargain" underlying workers' compensation. Yet this Court's decisions continue to chip away at the bargain so that only one side of it, the employer's liability without regard to fault, would be recognizable today to

those who crafted it. The other side of the bargain, a liability for employers that is limited and determinate, has become a vacuous mantra. I would affirm the Commissioner's decision, leaving claimant free to pursue a fault-based claim against CCSU, or others, should a basis exist to do so. Accordingly, I dissent.

¶ 83.    I am authorized to state that Justice Skoglund joins this dissent.

_____
Associate Justice